JAMES LEE ALDERSON *v.* STATE OF INDIANA.

[No. 973S177. Filed September 11, 1974.]

*Jerry P. Baugh, Baugh and Baugh,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Henry O. Sitler,* Deputy Attorney General, for appellee.

GIVAN, J.—Appellant was charged by indictment with the crime of second degree murder. Trial by jury resulted in a verdict of guilty as charged.

The record reveals the following evidence:

Appellant, James. L. Alderson, and the deceased, Harry Alford, lived on the same floor in an apartment building in Evansville, Indiana. On the night of April 3, 1972, the two men had an argument in the hallway between their apart-

ments. During the argument the appellant fired a tear gas pistol in decedent's face. A struggle ensued, following which appellant returned to his room, took a .38 caliber revolver from a box in a dresser drawer and returned to the hall where he fired two shots, one of which struck the deceased. A third shot was fired inside appellant's apartment. This shot also struck the decedent. Two bullets were recovered from the hallway: one from the decedent's apartment door; the other was found lying on the floor in the hall. One bullet was also recovered from the wall in appellant's apartment.

When police arrived a few minutes after the shooting, Alford was dead on the floor in appellant's room. An autopsy revealed that two bullets had passed through his body. Death was caused by a severed aorta.

Appellant admits that he shot decedent, but contends that all the shots were fired in self-defense during the struggle in his room.

Appellant's former wife by deposition corroborated appellant's version. However, in rebuttal the State showed that shortly after the shooting she told a conflicting story.

Appellant raises three issues for the consideration of this Court: 1) Whether the opening statement given by the prosecuting attorney was sufficient as required by statute; 2) Whether the police officer who testified concerning ballistics tests was qualified to so testify; 3) Whether the State was required to lay a foundation prior to impeaching the testimony of appellant's former wife.

Appellant's first argument is based upon the interpretation of IC 35-1-35-1, Burns Ind. Ann. Stat., 1956 Repl., § 9-1805, the pertinent part of which section reads as follows:

"The jury being impaneled and sworn, the trial shall proceed in the following order:

First. The prosecuting attorney must state the case of the prosecution and briefly state the evidence by which he expects to support it, and the defendant may then state his defense and briefly the evidence he expects to offer in support thereof."

Appellant contends that the prosecutor's statement was insufficient to fulfill the requirement of the statute. The prosecuting attorney made a brief statement to the effect that the State would attempt to produce evidence on each element of the offense of second degree murder; that the jury would have to consider the testimony together with physical evidence, and that all of the evidence of the State would convince the jury beyond a reasonable doubt that the defendant purposely and maliciously killed the decedent, and that the evidence would show that the defendant was not acting in self-defense. The prosecuting attorney did not attempt to identify the witnesses nor did he attempt to indicate what their testimonies might be.

Appellant cites *Blume* v. *State* (1963), 244 Ind. 121, 189 N.E.2d 568, 1 Ind. Dec. 290, for the proposition that the purposes of the opening statement are to inform the jury as to the questions of fact and to inform the accused of the contemplated course of prosecution.

The statute is procedural in nature. This Court has given great leeway to the trial court's discretion in controlling the orderly progress of the trial. In *Blume, supra,* this Court said that the scope of the opening statement was within the discretion of the trial court, and that the cause would not be reversed unless there was a clear abuse of such discretion.

Appellant contends that he was harmed by the shortcomings of the prosecutor's opening statement for he was thus placed in a position of explaining to the jury the facts of the case and was, therefore, unable to present other important matters which he had planned to present when the court imposed a time limit on his opening statement. This record shows that the time limit was imposed by the trial court only after defense counsel had been warned several times about testifying and going into too much detail in his opening statement.

In the case of *Buise* v. *State* (1972), 258 Ind. 321, 281 N.E.2d 93, 96, 30 Ind. Dec. 258, this Court stated:

"The opening statement is not evidence and the jury is so instructed. Neither is an argument permitted. Therefore, the defendant can not be said to have been harmed unless the State has abused its privilege in making the opening statement by misstatement or false statements which have prejudicially misled a defendant."

We, therefore, hold that there is no showing in this record that the appellant was in any way surprised or misled by the opening statement of the prosecuting attorney. The mere fact he did not go into detail as to names of witnesses and specific statements which they would make does not in and of itself justify a reversal of this case.

Appellant's second contention is that the trial court erred in allowing Officer Egan of the Evansville Police Department to testify concerning ballistics tests performed by him for the reason that he was not qualified as a ballistics expert. Officer Egan identified himself as a police officer assigned to the Laboratory Division of the Department. No more qualification was given prior to objection by defense counsel. However, later in his testimony Officer Egan stated that he had been running ballistics tests for the Department in excess of six years; that he had conducted in excess of 700 tests; that he attended the Research Laboratory in Morristown, New Jersey, and the Indiana State Police Laboratory in Indianapolis. The rest of his training was on-the-job training. The officer went into great detail explaining the nature of the ballistics tests and the manner in which they were conducted. Officer Egan did not give an opinion as to whether the bullets recovered at the scene of the crime were fired from appellant's pistol. His testimony consisted solely of his observation that the bullets were of the same caliber and weight as the test bullets fired from appellant's gun, and that they had the same number of lands and grooves and had the same right-hand twist. He stated that the bullets recovered at the scene of the crime were so mutilated that no positive identification could be made.

We, therefore, hold that it was not error to permit Egan to testify concerning normal visual observations of the similarity of the bullets in question.

Appellant also contends the trial court erred in overruling his objection to the testimony of Officer Egan concerning any tests made to determine the presence of human tissue on two of the recovered bullets. However, the record discloses the testimony of Officer Egan merely is that he observed and saw what "appeared to be" human tissue on them. There was no testimony by Officer Egan that any tests were conducted to determine whether the material seen on the bullets was in fact human tissue. It was proper for Officer Egan to testify as to what he saw concerning bullets and their condition. There was no objection to his statement that the material on the bullets "appeared to be human tissue." He did not represent to the jury that he had made any tests, and there was no evidence before the jury that the material was in fact human tissue.

Due to the admission of the appellant at the trial, the only issue is as to where the fatal shooting occurred. There is an abundance of evidence separate and apart from the question of human tissue on the bullets to establish where the shots were fired into the decedent's body by the appellant. Although Officer Egan should not have been permitted to draw conclusions as to the nature of the tissue he saw on the bullets, we hold that such testimony is not of sufficient prejudice to warrant a reversal of this case.

Appellant next argues the trial court erred in allowing Officer White to impeach the testimony of appellant's former wife. She was deposed prior to trial in order to preserve her testimony. In her deposition she testified that all three shots fired on the night of decedent's death were fired in appellant's apartment. She stated that the appellant obtained the gun from the bed on which she was lying when the decedent broke into the apartment and knocked appellant onto the bed. She further testified that when appellant fired the shots that

decedent was attacking him with a broken beer bottle. When Officer White was called as a rebuttal witness, he stated that some ten minutes after the shooting appellant's former wife told him that appellant entered the apartment by himself, obtained the pistol from a dresser drawer and returned to the hallway after she told him not to get the gun.

It thus becomes apparent that Officer White's testimony did in fact impeach appellant's former wife, Mrs. Mead. It was error for the trial court to allow the officer to so testify when no foundation had been laid in the deposition to impeach the witness. *Aikins* v. *State* (1971), 256 Ind. 671, 271 N.E.2d 418, 26 Ind. Dec. 401.

However, the admission of the testimony was harmless when considered with respect to the entire record. *Johnson* v. *State* (1968), 251 Ind. 369, 241 N.E.2d 270, 15 Ind. Dec. 644. The physical evidence and testimony of witnesses other than Officer White overwhelms Mrs. Mead's deposition and appellant's testimony. The bullets found in the hall were in such positions that they could not have been fired from appellant's room and landed where they did without having ricocheted on a protrusion in the hallway. There were no marks on the protrusion. Other witnesses testified that the fight between appellant and decedent had ended before the shooting; one of these witnsses, Linda Jones, testified that she saw a hand and a pistol extend beyond a bend in the hallway and fire a shot at the decedent. This bend was several yards from appellant's doorway. The disarray of the pistol box in the open dresser drawer belies the appellant's and Mrs. Mead's testimony that the pistol was on the bed.

We, therefore, hold that it was harmless error to permit Officer White to give impeaching testimony.

We find no reversible error in this record.

The judgment of the trial court is, therefore, affirmed.

Arterburn, C.J., and Hunter and Prentice, JJ., concur; DeBruler, J., dissents with opinion.

## DISSENTING OPINION

DEBRULER, J.—I agree with the majority in its conclusion that it was error for the trial court to permit Officer White to give testimony describing prior inconsistent statements allegedly made by the defense witness Mead, for the purpose of impeaching Mead. No foundation had been made for the purpose of impeaching Mead in this manner. She was not asked in her deposition whether or not those statements had been made by her, and the circumstances under which such statements may have been given were not brought to her attention. This is contrary to the legal requirement of a proper foundation as a condition precedent to the offering of such impeaching testimony. *Aikins* v. *State* (1971), 256 Ind. 671, 271 N.E.2d 418.

I cannot, however, agree with the majority in its assessment of the prejudicial effect of Officer White's testimony. If the jury had believed Mrs. Mead's version of the events surrounding the alleged homicide, it would probably have acquitted appellant on the grounds that he was acting in self defense in killing Alford. Mrs. Mead contended that appellant had fired the fatal shots while standing in his own room, defending himself from an assault by Alford who was armed with a broken beer bottle. Her version is supported by several important and essentially uncontroverted facts. First, the body of Alford was found by police inside appellant's room. Second, a broken beer bottle was found in the doorway to the room. Third, in this episode appellant suffered a severe injury to his head requiring stitches as well as two or three cuts in the left shoulder. Under these circumstances, I cannot agree that the error in admitting this impeaching testimony was harmless. I therefore vote to grant a new trial.

NOTE.—Reported at 316 N.E.2d 367.