Joseph M. KALADY, Appellant,

v.

STATE of Indiana, Appellee.

No. 182S30.

Supreme Court of Indiana.

May 10, 1984.

Susan K. Carpenter, Public Defender of Ind., David P. Freund, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. of Ind., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Joseph M. Kalady was convicted of Theft, Ind.Code § 35–43–4–2 (Burns Repl.1979) and § 35–43–4–4 (Burns Repl.1979), at the conclusion of a jury trial in Elkhart Superior Court on October 30, 1980. Kalady also was found to be a habitual offender. The trial court

sentenced him to thirty-four (34) years imprisonment. He now appeals.

After combining several related issues, the defendant raises the following fifteen errors on appeal:

1) whether there was sufficient evidence to convict the defendant of theft;

2) whether the trial court erred by allowing the State to amend the information;

3) whether the State committed error in the examination of a witness;

4) whether the State erred in asking certain questions during the *voir dire;*

5) whether the trial court erred in failing to admonish the prosecutor during the opening argument;

6) whether the trial court erred in overruling the defendant's objections to allegedly prejudicial statements during the final argument;

7) whether the trial court erred in allowing a prosecution witness to give an opinion;

8) whether the trial court erred in allowing a witness to testify about irrelevant, immaterial, and prejudicial matters;

9) whether the trial court erred in allowing a witness to answer a question that called for an irrelevant and immaterial answer;

10) whether the defendant's former counsel deprived him of effective assistance of counsel;

11) whether the trial court erred in sentencing the defendant for contempt of court;

12) whether the trial court erred in refusing to rule on motions;

13) whether the trial court erred by requiring the defendant to furnish a handwriting exemplar;

14) whether the trial court erred in denying the defendant's *pro se* motion for discovery; and,

15) whether the trial court erred in refusing to give defendant's tendered instruction 9, and in giving final instructions 13 and 7.

Joseph Kalady was the Secretary/Treasurer of Recreation Marketing Services, Inc. (RMS), a mail order truck cover operation. Frank Gerage served as President of RMS. On March 1, 1978, a checking account was opened at the First Pacific Bank of Chicago in Chicago, Illinois, in the name of RMS. A personal check from Joseph Kalady in the amount of $100.00, drawn on the St. Joseph Valley Bank in Elkhart, Indiana, was deposited into the RMS account. On March 6, 1978, the defendant deposited a check for $2,500.00, drawn on the First Pacific Bank of Chicago from the RMS account, into his personal checking account. The next day, March 7, defendant Kalady wrote a check against his personal checking account in the amount of $2,000.00, payable to cash. Six days later on March 13, 1978, the check for $2,500.00 was returned to the St. Joseph Valley Bank and charged against Kalady's account for nonsufficient funds. The St. Joseph Valley Bank contacted the defendant on several occasions to rectify the overdraft but Kalady never responded. The bank filed a civil action against the defendant to recoup its loss and was awarded a judgment but it was never paid.

I

The defendant first argues that there is insufficient evidence to convict him of theft. Defendant urges this Court to find that the State's evidence does not show that he had the requisite intent to deprive the St. Joseph Valley Bank of its money. Defendant Kalady also alleges that the State failed to prove venue by a preponderance of the evidence and the verdict should be reversed.

The defendant was charged with theft pursuant to Ind.Code § 35–43–4–2 and, more particularly, Ind.Code § 35–43–4–4(e), which sections read as follows:

> 35–43–4–2. Theft.—A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the

other person of any part of its value or use, commits theft, a class D felony. 35-43-4-4. ... Insufficient fund checks ...

\* \* \* \* \* \*

(e) Except as provided in section 5(b) [35-43-4-5(b)] of this chapter, a person who has insufficient funds in or no account with a drawee credit institution and who makes, draws, or utters a check, draft, or order for payment on the credit institution may be inferred:

(1) To have known that the credit institution would refuse payment upon presentment in the usual course of business; and

(2) To have intended to deprive the owner of any property acquired by making, drawing, or uttering the check, draft, or order for payment of a [any] part of the value of that property.

██ In determining sufficiency of the evidence, this Court will not weigh the evidence. Rather, the evidence will be found sufficient if, viewing the evidence most favorable to the State and reasonable inferences drawn therefrom, there was substantial evidence of probative value as to every element of the crime charged. *Gibbens v. State*, (1982) Ind., 434 N.E.2d 82; *Webb v. State*, (1977) 266 Ind. 554, 364 N.E.2d 1016.

██ There was sufficient evidence presented to the jury from which it could find or infer that the defendant intended to deprive the St. Joseph Valley Bank of its property. Without reciting the facts again as presented above, the jury could have inferred that the defendant knew that sufficient funds were not available when he wrote a check for $2,000.00 made payable to cash and drawn on the First Pacific Bank of Chicago, and then presented the check for payment to the St. Joseph Valley Bank in Elkhart. Furthermore, the evidence shows that the St. Joseph Valley Bank informed the defendant on many occasions that there was an overdraft and made demand for its payment. The defendant never responded to the bank's request. The trier of fact, therefore could

reasonably have inferred that the defendant knowingly or intentionally exerted unauthorized control over the property of the St. Joseph Valley Bank with intent to deprive the bank of its use or value.

██ Defendant also argues that there was no evidence to prove that the theft occurred in Elkhart County, Indiana. Proper venue must be proved by the State by a preponderance of the evidence. *Sizemore v. State*, (1979) 272 Ind. 26, 395 N.E.2d 783. Proof that the crime occurred in the county identified in the charging instrument ordinarily serves this purpose. *Morris v. State*, (1980) Ind., 409 N.E.2d 608. The defendant and the State entered into a stipulation which was admitted into evidence which stated, among other things, that the defendant Joseph M. Kalady was the maker and signer of the check payable to cash for $2,000.00, at the St. Joseph Valley Bank in Elkhart, Indiana, and cashed the check on March 7, 1978. Elkhart, Indiana is located in Elkhart County. This was sufficient with the other evidence to prove venue by the State.

## II

Defendant raises several issues concerning Count II, the habitual offender charge. One of those issues regarded the amendment of that Information by the State. Count II of the original information was filed on July 20, 1979. This Count charged that the defendant had previously been convicted of five felonies. On September 11, 1980, a jury found the defendant guilty of theft. On September 19, 1980, the State filed the Motion to Amend Count II of the Information in order to correct the dates of two prior felony convictions. The State, on December 11, 1980, filed a second amended Count II of the Information. On January 20, 1981, both the State and the defendant requested dismissal of the amended Count II as it existed prior to December 2, 1980. The trial court granted this request but also approved, over the objection of the defendant, the State's second amended Count II which was filed on December 11, 1980.

■ Defendant claims the trial court erred by permitting the State to file a second amended Count II of the Information. The State points out that Ind.Code § 35–3.1–1–5(c) (now repealed; see Ind. Code 35–34–1–1 *et seq.*) provides that an information may be amended at any time before, during or after trial if it does not prejudice the substantial rights of a defendant. Here the State properly filed the second Amended Count II. Furthermore, because the trial court had a problem determining the sentence to be given the defendant on the substantive charge (whether the theft conviction should be a class D felony or class A misdemeanor), the trial court took sentencing under advisement for approximately thirty days. During that time many members of the jury stated that they had read accounts of the proceedings in the newspapers and felt they could not be impartial in sitting on the habitual offender phase of the trial. They were accordingly discharged and a new jury was picked to hear the habitual offender proceeding. The record therefore shows the defendant was given adequate time to prepare a defense to the second amendment of Count II and that he was fully aware of both the changes in the amended count and of the charges he faced in the trial of this issue. The amendment, therefore, did not create any prejudice to the substantial rights of the defendant and we therefore see no error in the trial court permitting it.

■ Defendant further claims the trial court erred in sentencing him and considering the same aggravating factors in sentencing him on both the theft count and habitual criminal count. He argues that the use of prior convictions to enhance the sentence for the substantive crime constitutes reprosecution for the same offense after a finding that he is an habitual offender for those same convictions. This issue has already been decided adversely to the defendant by this Court in *Griffin v. State*, (1981) Ind., 415 N.E.2d 60. Habitual offender sentencing provision is neither a separate criminal charge nor an additional penalty for an earlier crime. The status of an habitual offender is not an offense or crime in itself but is a circumstance, the existence of which, if found by a jury, calls for the enhancement of the sentence for the last crime charged. Therefore, increasing the sentence in this manner for the immediate crime does not constitute a double enhancement.

■ Defendant claims the trial court erred in admitting into evidence State's Exhibit 3 during the habitual offender phase of the trial. State's Exhibit 3 was a certified copy of a judgment and commitment order indicating the defendant was found guilty of forging a U.S. Treasury check. The exhibit was at variance in some minor details with the allegations in Count II(c) of the Information. It is clear this certified judgment referred to the same charge as that recited in Count II(c) but there were certain minor variances in factual details. The State contends that there was ample evidence for the jury to find that the same charge was being referred to in both instances and that the jury was not misled by the variance, citing *Goodwin v. State*, (1982) Ind., 439 N.E.2d 595. It is apparent, however, that any possible error committed by the trial court in admitting this exhibit is harmless since the State proved three prior unrelated felony convictions in addition to the charge recited in Count II(c) and demonstrated by State's Exhibit 3. Since there was clear and probative proof of at least two prior unrelated felony convictions, any additional convictions were mere surplusage and the requirement of the habitual criminal statute was fulfilled. *Minneman v. State*, (1982) Ind., 441 N.E.2d 673.

■ Defendant claims the trial court erred by overruling his objection to being tried on the habitual offender count in front of a new jury impaneled for that purpose rather than the jury which heard the underlying felony charge. As we previously have indicated, the trial judge decided that it was impossible to make an informed judgment about whether the theft conviction should be a class D felony or a class A misdemeanor, pursuant to Ind.Code

§ 35–50–2–7, without a pre-sentence investigation and a hearing. Proceedings were continued until a pre-sentence report was prepared. Approximately one month after the verdict was returned the trial judge entered judgment on the theft conviction as a class D felony. Subsequently, members of the original jury stated they had seen publicity concerning the verdict and claimed they could not be impartial toward the defendant. As a result the trial judge discharged the jury and commenced the process of selecting a new jury to hear the habitual offender charge over the objection of the defendant. We previously held that § 35–50–2–8(c) does not preclude a different jury from determining the habitual offender charge. A trial on the habitual offender charge involves an issue of fact which is separate from the issues involved in the trial on the underlying felony due to the bifurcated nature of the proceeding as a whole. A new jury is qualified to make the determinations necessary for a finding as to the habitual criminal status. *Funk v. State,* (1981) Ind., 427 N.E.2d 1081; *McMillan v. State,* (1980) Ind., 409 N.E.2d 612. The trial court therefore did not err in providing that the defendant be tried by a new jury on the habitual offender count.

■ The defendant claims the trial court erred by failing to instruct the jury on the sentencing provisions of the habitual offender statute. We have repeatedly held that it is error to instruct the jury as to the penalty involved upon a finding under the habitual offender statute. *Erickson v. State,* (1982) Ind., 438 N.E.2d 269. Under the present statutory scheme, the jury is to play no role in sentencing defendants under the habitual offender statute or any other criminal penalty statute. Because juries do not fulfill any function regarding sentencing, the penalty prescribed by the legislature is irrelevant for their consideration and the matter wholly outside their purview. *State v. Williams,* (1982) Ind., 430 N.E.2d 756.

### III

Defendant claims the trial court erred by allowing Douglas Spicher, a former employee of RMS, to testify that on various occasions he had encountered problems in cashing his paychecks due to non-sufficient funds in the RMS accounts. Spicher related he would talk to Mr. Kalady about the checks and was told not to take them to the bank but to go to grocery stores and other businesses to cash them. The trial judge permitted the testimony but instructed the jury that it was not to use any of this evidence to determine the guilt or innocence of defendant Kalady. The jury was instructed that the evidence was being admitted merely as evidence to show intent, motive, purpose, identification or common plan or scheme and should be accepted by the jury for those purposes only and not for the purpose of determining the guilt of the defendant of this particular charge.

■ It is, of course, well-settled that prior bad acts of a defendant which do not result in a conviction are inadmissible in a criminal prosecution except to show intent, purpose, identification, common plan or scheme. *Bagnell v. State,* (1980) Ind.App., 413 N.E.2d 1072. There must be evidence of probative value which shows that a defendant actually engaged in those acts. *Howell v. State,* (1980) Ind., 413 N.E.2d 225. In this case it was necessary for the State to show that when the defendant made the check in question and presented it for payment he knew there were non-sufficient funds in the account and he intended to commit the offense of theft against the St. Joseph Valley Bank. The trial court therefore did not err by admitting this testimony. Furthermore, the trial court lessened the prejudicial impact of the testimony by giving the instruction indicating how the jury was to use such evidence. We see no reversible error from this issue.

### IV

Defendant claims the trial court erred by overruling his objections to certain questions asked by the prosecuting attorney during the *voir dire* examination of a prospective juror. The prosecuting attorney generally asked the juror if she agreed that

it is possible for a person to make a mistake in writing an overdrawn check that could easily be rectified afterwards but further asked if she agreed that a person could deliberately "bounce" a check and would be subject to the charge of theft if the State proved all of the facts necessary in a particular case. Defendant claims the questions were objectionable because the prosecuting attorney was impermissibly cultivating and conditioning the juror to be more receptive to the State's cause instead of using *voir dire* for the purpose of removing prospective jurors from the panel for bias or prejudice. The State contends the questions were proposed to the juror to elicit her attitude toward the offense of theft.

The trial court has broad discretionary power in regulating the form and substance of *voir dire* examination. *Hopkins v. State,* (1981) Ind., 429 N.E.2d 631. The prosecuting attorney did not misstate the law during the *voir dire* examination and the questions proposed did not suggest prejudicial evidence. The State contends the questions were proper since they were structured to discern the jury's tendency to believe or disbelieve certain things about the nature of the crime itself. The trial court did not abuse its discretion in permitting the questions to the extent that we find reversible error. *Phelps v. State,* (1977) 266 Ind. 66, 360 N.E.2d 191, *cert. denied* 434 U.S. 844, 98 S.Ct. 146, 54 L.Ed.2d 110.

## V

Defendant claims the trial court erred by failing to admonish the prosecuting attorney to refrain from making certain statements during open argument. The scope and content of the opening statement is largely a matter within the discretion of the trial court and a conviction will not be reversed because of some irregularity in the statement unless there has been a clear abuse of discretion resulting in some prejudice to the accused. *Alderson v. State,* (1974) 262 Ind. 345, 316 N.E.2d 367. The prosecuting attorney generally told the jury that the case was going to boil down to a question of intent. He then told them when they heard the evidence they were to focus upon that particular aspect, that it would be the burden of the State to prove that there was that intent, and generally recited to them the evidence that would be admitted that would tend to prove the case. The prosecuting attorney did go beyond the bounds of telling the jury only what he thought the evidence would prove. He, however, did discuss the facts and the conduct of the defendant that he proposed to reveal to them by the evidence. The remarks do not appear to be so improper that they were unduly prejudicial to the defendant and were well within the trial court's discretion to determine the propriety or the impropriety of them. No issue of reversible error is therefore presented.

## VI

Defendant also complains the trial court erred by overruling his objections to allegedly prejudicial statements made by the prosecuting attorney during final argument. We first note the conduct of final argument as well as the general course of the trial is within the sound discretion of the trial court. *Whitacre v. State,* (1980) Ind., 412 N.E.2d 1202. In addition, although remarks and arguments to the jury which are not supported by the evidence are neither approved nor condoned, the court, on review, recognizes that the trial court is in a better position to determine the propriety of such remarks and whether or not they are harmful. Therefore, the trial court must have a wide field of discretion as to such matters. *Downing v. State,* (1978) 178 Ind.App. 144, 381 N.E.2d 554.

In his final argument, the prosecuting attorney related the facts regarding the defendant's activities in the deposit of the $100 check in the Chicago bank, followed by the deposit of the $2500 check in the Elkhart Bank which was drawn on the Chicago Bank, and then the check for cash for $2000.00 presented to the Elkhart Bank. He made the statement that there was no difference between what the de-

fendant did in this transaction than if he had walked into the St. Joseph Valley Bank and put a gun to the teller and said: "Give me $2000." Defendant objected that this was prejudicial and the prosecutor retorted by stating that it was simply argument. The State further contends that the prosecuting attorney never stated the offense of theft is the same as armed robbery but used this example to emphasize the gravity of the defendant's conduct. The trial court gave final instruction No. 25 which read as follows:

> Opening statements are made by the attorneys to acquaint you with the facts they expect to prove. Closing arguments are made by the attorneys to discuss the facts and circumstances in the case, and should be confined to the evidence and to reasonable inferences to be drawn therefrom. Neither opening statements nor closing arguments are evidence, and any statement or argument made by the attorneys which is not based on the evidence should be disregarded.

In view of the strong and overwhelming evidence that the defendant did, in fact, commit theft and in view of the ameliorative instruction given by the trial court, we do not find the trial court abused its discretion in overruling the defendant's objection to the prosecutor's statement.

### VII

 Defendant next contends the trial court erred by permitting a State's witness to answer a question which required an opinion. The trial court in its discretion may permit an opinion by a witness in an appropriate case and his decision will be reviewed only for an abuse of discretion. *Shelby v. State*, (1981) Ind., 428 N.E.2d 1241. The witness in question was called by the State and was Richard Brija, a vice-president of the loan installment department of the First Pacific Bank of Chicago. He was asked if it was the custom and practice by the First Pacific Bank to allow a person who has a checking account with the bank to transfer funds from one account to another by telephone call. He stated that only in special instances is that

allowed. He was then asked if RMS, or Interco, Inc., (another company with which Defendant was involved), met the requirements that would allow them a special exception to transfer funds by telephone and he stated: "Not in my estimation." The defendant objected that this was an opinion expressed by the witness and should be stricken. The trial court then ruled: "And if he is going to give his opinion I think at this point I would have to sustain the objection as to an opinion." Because the trial court ruled in the defendant's favor and sustained his objection, we see no error that prejudiced this defendant. The record does not show that the defendant then moved the court to strike the previous answer of the witness, so no question of error is presented.

### VIII

On cross-examination by the defense of State's witness Richard Brija, Brija was asked if, as a matter of fact, he made loans to the defendant from time to time. He stated that was correct and then was asked how many loans he made. Brija stated he made at least four to the defendant and two were still open. Subsequently, on redirect examination, the prosecuting attorney asked about those loans in more detail as to what security was given for them and what was the purpose of the loans. The witness answered these questions and then was asked whether all four loans were repaid to the bank. Defendant objected to this, claiming that it had no relevance and was beyond the scope of cross-examination. The trial court overruled the objection, stating that the witness had already answered the question during cross-examination of the defendant and there was no motion to strike the answer. The witness was then allowed to testify that all four of the loans were not repaid. Over objection of the defendant, Brija was allowed to testify about the status of the four loans. Defendant now contends the only purpose of the redirect examination was to prejudice the defendant by showing his involve-

ment in improper conduct and therefore the trial court erred in admitting the testimony.

It is well-settled that the scope and extent of redirect examination is within the sound discretion of the trial court. *Dooley v. State*, (1981) Ind., 428 N.E.2d 1. Absent an abuse of discretion, the ruling of the trial court will not be disturbed. *Id.* In addition, the scope of redirect examination is to be directed to answering any new matter raised during cross-examination. Once a party raises a subject on cross-examination, it is permissible for the opposing party to pursue that subject on redirect examination. *Woodford v. State*, (1980) 273 Ind. 487, 405 N.E.2d 522. A defendant may not open an issue and have it closed at his convenience. *Fortson v. State*, (1978) 269 Ind. 161, 379 N.E.2d 147. It is apparent the trial judge was cognizant of these rules when he permitted the redirect examination by the prosecuting attorney and he committed no error in so doing. The witness not only testified on the same subject during cross-examination, he answered one of the very same questions concerning the status of the loans. No error has been shown on this issue.

### IX

Kenneth Howard, a former bookkeeping manager of the St. Joseph Valley Bank, was called by the State and asked to testify about the procedure for the presentment of a check to the bank. The State wanted Mr. Howard to explain how a particular check was docketed in the ordinary course of business. The defendant objected, arguing that the issue is "what happened in this case, not what they usually do." The State responded that it was asking this question to lay a foundation about the procedure used so that Mr. Howard could then go into specifics and explain to the trial court and the jury what was done in this case with the check presented by this defendant. The court overruled the objection. Defendant claims the trial court committed reversible error by overruling the objection. We fail to see any error in the admission of this question

and answer. It was permissible for the State to lay a foundation concerning general bank practice in order to question Mr. Howard in detail about the defendant's check. The rulings of a trial court on the relevancy of evidence are accorded wide latitude on appeal and we see no error in the trial court's decision here in permitting the question and answer. *White v. State*, (1981) Ind., 425 N.E.2d 95.

### X

The defendant contends he was denied his right to the effective assistance of counsel and he directs this complaint to the inadequacy of representation he received from attorney Jerry N. Virgil. There is a strong presumption that an attorney has properly discharged his duties to his client, and strong and convincing proof is required by the petitioner to overcome this presumption. To prevail on this issue, appellant must show that what the attorney did or did not do made the proceedings a mockery of justice shocking to the conscience of the court. *Leaver v. State*, (1981) Ind., 414 N.E.2d 959; *Duncan v. State*, (1980) 272 Ind. 614, 400 N.E.2d 1112. In reviewing an issue of this type, we look to the totality of the facts and circumstances to determine whether the accused received adequate representation. *Id.*

The record shows that Mr. Virgil's activities in the trial were more in the nature of local counsel and that he handled only a few preliminary matters for this defendant. Other attorneys entered their appearance and actually tried the case. Virgil appeared at arraignment and made a request for reduction of the defendant's bond and later withdrew his appearance. He later appeared again, briefly, and did file a motion for a change of venue from the judge which was granted. Prior to trial an attorney from the Elkhart Public Defender's Office was appointed to assist defense attorney Bourgeois. These attorneys tried the lawsuit and Virgil took no part in it.

First, there is no allegation from this defendant that the very limited action Virgil took on behalf of the defendant was done improperly or caused prejudice to the defendant. Second, and more important, the record clearly shows Virgil did not represent this defendant in the trial of his cause and the defendant does not claim there was any inadequacy or misconduct of those attorneys who represented him. Therefore, the State's contention is correct that the totality of the circumstances in this cause justified the trial court's conclusion that the defendant did not sustain his burden to establish inadequate representation of counsel.

## XI

■■■■ After the defendant was convicted of the crime of theft and prior to his trial on the habitual criminal charge, the trial court held a hearing on a motion for change of judge. Defendant testified at this hearing and refused to answer questions put to him by the State and the trial judge found him in contempt on nine separate occasions and sentenced him to 180 days plus $100.00 fine on each charge, ordering that the 180 day terms be served consecutively. The trial judge then disqualified himself and a special judge was appointed. The special judge then set aside the findings of contempt. Defendant now raises several issues on the findings of contempt. Since these findings were all set aside the question, of course, is moot. Defendant did not serve any time under the sentences because he was in jail for trial on the instant charges anyway. The jury knew nothing of these charges because they were done outside the presence of the jury and, in fact, as we already have indicated, a new jury was impaneled before the habitual offender phase began. There is nothing for this Court to review on this issue.

## XII

■■■■ Defendant claims the trial court erred in failing to rule on his motion to dismiss the information filed on August 1, 1979, and his motion for change of venue from the county, filed on April 28, 1981. The record indicates that the motion to dismiss was taken under advisement by the court and overruled by the court on December 19, 1979. The motion for change of venue from the county was filed along with a motion for change of judge that was filed between the conviction for theft and the hearing on the habitual offender charge. The motion for change of judge was granted and a special judge was appointed and assumed jurisdiction. The motion for change of venue from the county was never ruled on nor was it presented to the court for ruling. The issue was never raised again by the defendant and the cause was thereafter submitted before the special judge without any objection by the defendant. The issue has therefore been waived by the defendant. No error can be claimed on the subject matter of a motion never ruled on by the trial court. *Yager v. State*, (1982) Ind., 437 N.E.2d 454.

## XIII

■■■■ On August 1, 1979, the trial court ordered the defendant to furnish a handwriting sample. It was part of the State's burden in proving that the defendant made and presented for cash the check forming the basis for the theft charge. It is well-settled that although self-incrimination protects a defendant from testimonial compulsion, it does not protect against compulsory submission to purely physical tests such as fingerprinting, body measurements, handwriting and voice exemplars. *State ex rel. Keller v. Criminal Court of Marion County*, (1974) 262 Ind. 420, 317 N.E.2d 433; *Hollars v. State*, (1972) 259 Ind. 229, 286 N.E.2d 166. No error has been shown.

## XIV

■■■■ Defendant contends the trial court erred by denying his *pro se* motion for discovery wherein he requested that the State be ordered to disclose records of all felony prosecutions since January 1, 1976, with copies of all prior convictions of

all defendants so prosecuted or not prosecuted on charges filed since the date of January 1, 1976. Defendant argued that the information was necessary to determine whether or not his habitual offender charge was selectively or vindictively rendered. The trial court denied this motion. The trial court has wide discretionary latitude in discovery matters as a part of its inherent power to guide and control the proceedings. A conviction will not be reversed unless there has been a clear abuse of discretion resulting in prejudice to the accused. *Murray v. State,* (1982) Ind., 442 N.E.2d 1012. The trial court did not err in denying this discovery motion.

## XV

Defendant finally claims the trial court erred in the giving and refusing of certain instructions. The refusal of the trial court to give a tendered instruction is not reversible error if the substance of the instruction was adequately covered by other instructions given by the trial court. *Hall v. State,* (1980) 273 Ind. 507, 405 N.E.2d 530. Defendant's tendered instruction No. 9 proposed to generally instruct the jury on the facts they must find beyond a reasonable doubt before the defendant could be found guilty. The trial court's final instructions 15, 16, and 17, fully and adequately covered this issue and there was no error in refusing to give tendered instruction No. 9.

The trial court gave as its final instruction No. 13 a lengthy instruction commonly given by trial courts in criminal cases advising the jury of the meaning of their oath and how they are to come to a decision on the cause. It explained the import of the fact that they were the judges of the law as well as the facts and further admonished them about their duties as jurors. The identical instruction given by the trial court, and objected to by the defendant here, was approved by this Court in *Holliday v. State,* (1970) 254 Ind. 85, 257 N.E.2d 679. There was no error by the trial court in giving this instruction here.

The trial court gave final instruction No. 7 which told the jury they were not given any instructions on the penalties that could be imposed should there be a conviction because the assessing of the penalty was the sole responsibility of the trial court. The jury was instructed that the law was so written so the jury could make its decision without being influenced by the apparent severity or leniency of the sentence. The defendant claims the instruction implies that the trial court believes the defendant to be guilty and thereby indicates that a penalty will be imposed. The instruction was a correct statement of the law, however, and was approved by this Court as a proper instruction. *Rock v. State,* (1981) Ind., 426 N.E.2d 1320; *Jones v. State,* (1981) Ind., 425 N.E.2d 128.

Finding no error, we affirm the trial court.

GIVAN, C.J., and DeBRULER, HUNTER and PRENTICE, JJ., concur.