Attorneys for Appellant

Robert W. Rock
Anderson, IN

Attorneys for Appellee

Jeffrey A. Modisett
Attorney General of Indiana

Chris Worden
Deputy Attorney General
Indianapolis, IN

 IN THE
 INDIANA SUPREME COURT

BRIAN MEAGHER,
 Appellant (Defendant below),

 v.

STATE OF INDIANA,
 Appellee (Plaintiff below).

)
) Supreme Court No.
) 48S00-9804-CR-247
)
)
)
)
)
)

 APPEAL FROM THE MADISON COUNTY CIRCUIT COURT
 The Honorable Fredrick Spencer, Judge
 Cause No. 48C01-9709-CF-183

 ON DIRECT APPEAL

 April 3, 2000

SULLIVAN, Justice.

 Defendant Brian Meagher was convicted of dealing in cocaine within
1,000 feet of a public park. He was adjudicated a habitual offender and
sentenced to 80 years. He appeals his convictions on the grounds that he
received ineffective assistance of counsel and that the trial court
committed reversible error in ruling on the admissibility of certain
testimony. Although we find no ineffective assistance of counsel and
affirm the rulings of the trial court, we find that the trial court
improperly enhanced Defendant=s sentence.

 This Court has jurisdiction over this direct appeal because the
longest single sentence exceeds 50 years. Ind. Const. art. 7, ' 4; Ind.
Appellate Rule 4(A)(7).

 Background

 Suspecting that Defendant was selling a controlled substance from his
apartment, Robert Peckinpaugh contacted Jack Brooks of the Madison County
Drug Task Force in June, 1997, and offered to work as a confidential
informant. He informed Officer Brooks that he could arrange to purchase
crack cocaine from Defendant who, at the time, lived across the street from
him.

 Peckinpaugh arranged for three separate controlled buys from
Defendant.[1] Each transaction transpired in a similar manner. First,
Peckinpaugh arranged a drug purchase from Defendant. He then contacted
Officer Brooks and informed him of the arrangement. Prior to each
transaction, Officer Brooks searched Peckinpaugh to ensure he had no drugs,
money or weapons on his person. After being fitted with a wireless
transmitter, Peckinpaugh received money from Officer Brooks to purchase the
drugs from Defendant. The confidential informant then proceeded to
Defendant=s apartment and purchased crack cocaine from Defendant. After
the transaction and upon his return, Officer Brooks conducted another
search at which time Peckinpaugh relinquished the cocaine to Officer
Brooks.

 During the second and third transactions, after Peckinpaugh gave
Defendant the money to purchase crack cocaine, Defendant left his apartment
and paged someone from a nearby pay phone. Thereafter, a dark blue
Cadillac pulled up in the alley. Defendant reached into his pocket and
handed something to a male passenger who gave Defendant something in
return.[2] Defendant then delivered a zip-lock baggie with several pieces
of crack cocaine to Peckinpaugh.

 As a result of these controlled buys, the State charged Defendant with
two counts of dealing in cocaine within 1,000 feet of a public park,[3] a
Class A felony; aiding, inducing or causing an offense of dealing in
cocaine,[4] a Class B felony; and maintaining a common nuisance,[5] a Class
D felony. The State also charged Defendant as a habitual offender. A
jury convicted Defendant on all charges and then found that Defendant was a
habitual offender.

 The trial court imposed the maximum sentence for each dealing in
cocaine count, and enhanced one of these sentences by 30 years under the
habitual offender statute resulting in an 80-year sentence. The trial
court also sentenced Defendant to ten years for aiding in the offense of
dealing cocaine and three years for maintaining a common nuisance and
ordered those sentences to be served concurrently with the 80-year
sentence.

 Discussion

 I

 Defendant contends that he was denied his right to effective
assistance of counsel guaranteed by the federal and state constitutions.

 We evaluate Sixth Amendment claims of ineffective assistance of
counsel by applying the two-prong test established in Strickland v.
Washington, 466 U.S. 668 (1984). See, e.g., Canaan v. State, 683 N.E.2d
227, 229 (Ind. 1997), cert. denied, 524 U.S. 906 (1998); Lowery v. State,
640 N.E.2d 1031, 1041 (1994), cert. denied, 516 U.S. 992 (1995). The
first prong requires a defendant to demonstrate that counsel=s performance
fell below an objective standard of reasonableness in light of prevailing
professional norms. See id. To satisfy the second prong, the defendant
must show that the deficient performance was so prejudicial as to deny
defendant a fair trial. See Brown v. State, 698 N.E.2d 1132, 1139-40 (Ind.
1998), cert. denied, 119 S. Ct. 1367 (1999). A defendant is denied a fair
trial only when a conviction occurs as the result of a breakdown in the
adversarial process rendering the trial result unreliable. See Brown, 698
N.E.2d at 1140; Cooper v. State, 687 N.E.2d 350, 353 (Ind. 1997); Marshall
v. State, 621 N.E.2d 308, 321 (Ind. 1993).

 Defendant contends that his counsel’s performance was deficient in
failing to object to statements made by Officer Brooks. His allegations
concerning Officer Brooks’s testimony are that: (1) defense counsel failed
to object to hearsay evidence when the officer recounted conversations with
the confidential informant regarding the controlled buys,[6] (2) defense
counsel failed to object to hearsay evidence concerning the officer=s
validation of the confidential informant=s photo identification of
Defendant,[7] and (3) defense counsel failed to object to the State=s
leading question regarding the confidential informant=s motivation to
participate with the Drug Task Force.[8]

 The second prong of the Strickland test may be determinative of
Defendant=s allegations. Strickland, 466 U.S. at 697 (“If it is easier to
dispose of an ineffectiveness claim on the ground of lack of sufficient
prejudice, which we expect will often be so, that course should be
followed.”); Coleman v. State, 703 N.E.2d 1022, 1028 (Ind. 1998). In each
complained of instance, the confidential informant provided personal, first-
hand knowledge testimony. First, the confidential informant explained when
and how he contacted Officer Brooks after arranging each drug purchase with
Defendant. Second, during his testimony, the confidential informant
explained and confirmed his identification of Defendant in the photo array.
 Finally, the informant personally testified that his motivation to
participate in the controlled buys stemmed from his concern that his nine-
year-old daughter was living across the street from a Acommon crack house.@

 In light of the confidential informant=s testimony, we do not find
that Officer Brooks’s testimony was so prejudicial as to deny Defendant a
fair trial. The complained of evidence was at most cumulative and
therefore insufficient to establish prejudice. See Timberlake v. State,
690 N.E.2d 243, 260 (Ind. 1997) (holding that the defendant failed to
demonstrate that he suffered prejudice due to counsel=s failure to object
to various witness statements finding that the evidence was cumulative and
innocuous), cert. denied, 525 U.S. 1073 (1999). Accordingly, Defendant=s
ineffective assistance of counsel claim fails.

 II

 Defendant contends that the trial court committed reversible error by
curtailing his cross-examination of the confidential informant when
Defendant attempted to expose his motivation for participating in the
controlled buys.

 A defendant=s Sixth Amendment right of confrontation requires that a
defendant be afforded the opportunity to conduct effective cross-
examination of state witnesses in order to test their believability. See
Davis v. Alaska, 415 U.S. 308, 315-16 (1974); Coates v. State, 534 N.E.2d
1087, 1095 (Ind. 1989); Munn v. State, 505 N.E.2d 782, 784-85 (Ind. 1987).
However, this right is subject to the sound discretion of the trial court,
which includes limiting repetitive and unduly harassing interrogation. See
id; see also Ind. Evidence Rule 611(a) (AThe court shall exercise
reasonable control over the mode and order of interrogating witnesses . . .
so as to . . . protect witnesses from harassment or undue embarrassment.@).
 As the Unites States Supreme Court explained in Delaware v. Van Arsdall,
475 U.S. 673 (1986):
 The Confrontation Clause of the Sixth Amendment guarantees the
 right of an accused in a criminal prosecution "to be confronted with
 the witnesses against him." The right of confrontation, which is
 secured for defendants in state as well as federal criminal
 proceedings, Pointer v. Texas, 380 U.S. 400 (1965), "means more than
 being allowed to confront the witness physically." Davis v. Alaska,
 415 U.S. at 315. Indeed, " '[t]he main and essential purpose of
 confrontation is to secure for the opponent the opportunity of cross-
 examination.' " Id. at 315-316 (quoting 5 J. Wigmore, Evidence '
 1395, p. 123 (3d ed. 1940)) (emphasis in original). Of particular
 relevance here, "[w]e have recognized that the exposure of a witness'
 motivation in testifying is a proper and important function of the
 constitutionally protected right of cross-examination." Davis, [415
 U.S.] at 316-17 (citing Greene v. McElroy, 360 U.S. 474, 496 (1959)).
 It does not follow, of course, that the Confrontation Clause of the
 Sixth Amendment prevents a trial judge from imposing any limits on
 defense counsel's inquiry into the potential bias of a prosecution
 witness. On the contrary, trial judges retain wide latitude insofar
 as the Confrontation Clause is concerned to impose reasonable limits
 on such cross-examination based on concerns about, among other things,
 harassment, prejudice, confusion of the issues, the witness' safety,
 or interrogation that is repetitive or only marginally relevant.

Id. at 678-79 (emphasis in original). Only a clear abuse of discretion
warrants reversal. Coates, 534 N.E.2d at 1095.

 Defendant contends he wanted to expose the confidential informant=s
dire financial status B the confidential informant=s inability to meet his
obligations B so as to reveal his motivation for working with the Drug Task
Force.[9] Defendant’s offer of proof described the confidential
informant=s attempt to sell property to his neighbor because he needed the
money to pay his utility bill.[10] However, the State introduced evidence
that the confidential informant received $50.00 as payment for his
participation in each controlled buy. Given that the jury was already
presented with evidence that the confidential informant may have had a
financial interest in assisting the Drug Task Force, it was within the
discretion of the trial court to conclude that further pursuit of his
financial status B particularly his inability to pay his utility bill B
would have only served to unnecessarily harass or embarrass the witness.
As we noted in Thornton v. State, “[P]rohibition of all inquiry into the
possibility of motive and bias may violate the Confrontation Clause, but
trial courts are permitted to impose reasonable limits.” 712 N.E.2d 960,
964 (Ind. 1999). Accord Van Arsdall, 475 U.S. at 679. Given that the
confidential informant testified to the receipt of $50.00 for each
controlled buy, the issue of motivation was already before the jury. The
trial court did not abuse its discretion in excluding Defendant=s proffered
evidence for motivation.

 III

 Defendant next contends that the trial court committed reversible
error by permitting a police officer to testify that the male passenger
identified in the blue Cadillac pled guilty to the possession of cocaine.
Defendant claims that whether this person was convicted for possession of
cocaine was not relevant to the outcome of his case.

 During cross-examination of Officer Brooks, defense counsel
questioned the officer regarding this individual=s arrest and charges. On
re-direct, the State inquired into the resolution of those charges. The
officer responded that the individual admitted to the possession of cocaine
in open court. Defendant objected arguing that the State=s re-direct
exceeded the scope of his cross-examination.[11]
 The scope and extent of re-direct examination is within the sound
discretion of the trial court. See Jones v. State, 600 N.E.2d 544, 547
(Ind. 1992); Dooley v. State, 428 N.E.2d 1, 6 (Ind. 1981); Kalady v. State,
462 N.E.2d 1299, 1309 (Ind. 1984). Absent an abuse of that discretion, the
trial court=s ruling will not be disturbed. See id. Answering any new
matter raised during cross-examination is within the scope of re-direct.
See Jones, 600 N.E.2d at 547 (citing Kimp v. State, 546 N.E.2d 1193, 1195
(Ind. 1989), transfer denied.). Further, when a party raises a subject on
cross-examination, it is permissible for the opposing party to pursue that
subject on re-direct examination. See Kalady, 462 N.E.2d at 1309 (citing
Woodford v. State, 273 Ind. 487, 405 N.E.2d 522 (Ind. 1980)).

 The trial court ruled that the State=s question was properly within
the scope of re-direct because Defendant had raised the issue of the
individual=s arrest on cross-examination. We agree. The State only sought
to pursue the issue once it was introduced by Defendant. We have
previously held that a party may not open an issue and then seek to have it
closed at the party’s convenience. See Kalady, 462 N.E.2d at 1309; Fortson
v. State, 269 Ind. 161, 170, 379 N.E.2d 147, 153 (1978); Baker v. State,
267 Ind. 643, 645, 372 N.E.2d 1174, 1175 (1978). We do not find that the
trial court abused its discretion in permitting the testimony.

 IV

 Defendant contends that the trial court=s sentencing statement was
inadequate to support the imposition of enhanced sentences. The trial
court imposed enhanced sentences for Dealing in Cocaine[12] and Maintaining
a Common Nuisance.[13] However, Defendant contends that the trial court
failed to identify any aggravating circumstances to justify such
enhancements and as such, the sentence was improper. We agree.

 In general, the legislature has prescribed standard sentences for each
crime, allowing the sentencing court limited discretion to enhance each
sentence to reflect aggravating circumstances or reduce the sentence to
reflect mitigating circumstances. When the trial court imposes a sentence
other than the presumptive sentence, this Court will examine the record to
insure that the court explained its reasons for selecting the sentence it
imposed. See Archer v. State, 689 N.E.2d 678, 683 (Ind. 1997) (citing
Hammons v. State, 493 N.E.2d 1250, 1254 (Ind. 1986), reh’g denied.)), reh’g
denied. The trial court=s statement of reasons must include the following
components: (1) identification of all significant aggravating and
mitigating circumstances; (2) the specific reasons that lead the court to
find the existence of each such circumstance; and (3) an articulation
demonstrating that the mitigating and aggravating circumstances have been
evaluated and balanced in determining the sentence. See Mitchem v. State,
685 N.E.2d 671, 678 (Ind. 1997) (citing Jones v. State, 675 N.E.2d 1084,
1086 (Ind. 1996)).

 Here, the sentencing statement is devoid of any reasoning justifying
an enhanced sentence.[14] The trial court failed to identify any
significant aggravating circumstances or point to any specific facts and
reasons that might have led the trial court to find the existence of an
aggravating circumstance. The failure of the trial court to explain its
reasons for imposing enhanced sentences was improper. [15]

 Because the trial court found no significant aggravating or
mitigating circumstances, we conclude that the imposition of presumptive
sentences for each guilty offense is appropriate. We affirm the habitual
offender enhancement and the trial court=s finding that the sentences on
the four counts should be served concurrently. Accordingly, we now impose
upon Defendant a sentence of 60 years. [16]

 Conclusion

 Defendant=s convictions are affirmed; however, the cause is remanded
to the trial court to amend the judgment in accordance with footnote
sixteen of this opinion.

SHEPARD, C.J., and DICKSON, BOEHM and RUCKER, JJ., concur.
-----------------------
 [1] These transactions took place on June 17, 18 and 23, 1997.

 [2] During the second transaction, a female driver and a male
passenger arrived at Defendant’s apartment building in the blue Cadillac.
During the third transaction, the same male passenger served as the sole
driver of the blue Cadillac who delivered a package to Defendant.

 [3] Ind. Code § 35-48-4-1(a), (b)(3)(B)(ii) (Supp. 1996).

 [4] Id. §§ 35-41-2-4 (1993) and 35-48-4-1(a).

 [5] Id. § 35-48-4-13(b) (1993).
 [6] Here, Defendant directs us to two separate exchanges:
 (1) Q: What did [the informant] state to you at that time?
 A: He stated that he had talked to [Defendant]. He had set
 up a buy for later on in the afternoon.
(R. at 191.)
 (2) Q: And [the informant] wanted to set up another control buy?
 A: Yes he did. He said he had spoke to [Defendant] and once
 again he had another deal set up for the evening.
(R. at 239.)

 [7] Defendant contests the following exchange:
 Q: And which picture did [the confidential informant] pick out?
 A: He positively identified photo #3 as being the subject he knew
 as [Defendant] who [sic] me purchased cocaine from.
 Q: And photo #3 is a photo of?
 A: [Defendant].
 Q: The defendant in this cause?
 A: Yes.
(R. at 261.)

 [8] The officer testified as follows:
 Q: Officer the only other benefit that [the confidential informant]
 received aside from his fifty dollars ($50.00), would be seeing
 a drug dealer off the streets.
 A: Yes sir.
(R. at 294.)
 [9] Defendant’s offer to prove included testimony of the confidential
informant’s neighbor:
 Q: [D]id [the informant] ever personally try to sell a
 lawnmower to you?
 A: Yes he did.
 Q: Was this about in June of [1997]?
 A: That would be real close.
 Q: Did he indicate that he had need of money at that time?
 A: Yes he did.
 Q: Okay, did he say what he needed the money for?
 A: Yes he wanted to know if I would be interested in buying
 his lawnmower because he needed the money to pay his
 utilities.
 Q: Did he indicate his utilities might be shut off?
 A: Yeah.
 Q: Had you knowledge at one point that he needed money about
 the time period because some friend[s] were coming in?
 A: I let him do some painting in that front apartment because
 he told me that he needed some extra money that he had a
 friend coming in from out of town and they were going to go
 do a little partying.
 (R. at 521-22.)
 [10] Defendant also contends that he was not permitted to testify that
he asked his previous roommates to move out because they were selling drugs
from his apartment. Br. of Appellant, at 15-16. However, after careful
review of the record, we find that Defendant was afforded the opportunity
to testify to these very facts. Additionally, Defendant complains that he
was not permitted to ask the confidential informant whether he sold
Defendant his television. However, during a defense offer to prove, the
confidential informant denied that this was the case. Further, Defendant
testified that the confidential informant “brought stuff over [to his
apartment] and traded with people for stuff. . . .” (R. at 537.) As such,
we find these two allegations without merit.
 [11] During defense counsel’s cross-examination of the police officer,
the following colloquy took place:
 Q: Did you arrest this occupant in this blue Cadillac?
 A: Yes sir I did.
 ***
 Q: Were charges filed?
 A: Yes sir.
 Q: What charges were filed?
 A: Possession of Cocaine, a Class B Felony, because it was enhanced
 within a thousand feet of a public park.
(R. at 270-71.)

 On re-direct, the State posed the following questions:
 Q: Officer, defense counsel asked you a question regarding the
 black male in the Cadillac about his charges. Was there a
 resolution of those charges?
 A: Yes sir he admitted to possession of cocaine in court.
(R. at 289.)

 [12] Defendant was convicted of two counts of dealing in cocaine. The
presumptive sentence for Dealing in Cocaine within 1,000 feet of a public
park, a Class A, felony is 30 years with not more than 20 years added for
aggravating circumstances. See Ind. Code § 35-50-2-4 (Supp. 1996). The
trial court imposed the 50-year maximum sentence on both dealing
convictions.

 [13] The presumptive sentence for Maintaining a Common Nuisance, a
Class D felony, is one and one-half years with not more than one and one-
half years added for aggravating circumstances. See Ind. Code § 35-50-2-7
(1993). The trial court imposed the maximum three-year sentence.

 [14] We note that the trial court commented on the fact that Defendant
dealt cocaine within 1,000 feet of a public park. (R. at 685.) The
offense of dealing in cocaine is elevated to a class A felony when
committed within 1,000 feet of a public park. See Ind. Code ' 35-48-4-
1(b)(3)(B)(ii). As such, we consider the fact that Defendant dealt cocaine
within 1,000 feet of a public park a material element of the offense.
Accord Walker v. State, 668 N.E.2d 243, 244-46 (Ind. 1996) (by implication)
(DeBruler, J., dissenting) (concurring with majority that dealing cocaine
within 1,000 feet of a school constitutes a material element of the crime),
reh’g denied. AThe mere fact which comprises a material element of a crime
may not also constitute an aggravating circumstance to support an enhanced
sentence, but the particularized individual circumstances may constitute a
separate aggravating circumstance.@ Townsend v. State, 498 N.E.2d 1198,
1201 (Ind. 1986) (emphasis added); Ector v. State, 639 N.E.2d 1014, 1015
(Ind. 1994); Johnson v. State, 687 N.E.2d 345, 347 (Ind. 1997). Here,
however, the trial court offered no particularized circumstance with which
to substantiate an enhanced sentence other than the mere recitation of this
element B that is, the trial court failed to provide a reasoned application
of detailed facts to an aggravating circumstance.

 [15] The State acknowledges: “The State recognizes that the trial
court enhanced Defendant’s sentences for Dealing in Cocaine and Maintaining
a Common Nuisance without indicating either during the sentencing hearing
or in its order what aggravating circumstances it found.” Br. of Appellee,
at 11.

 [16] The ten-year presumptive sentence for Count I remains unchanged.
Defendant’s individual sentences are revised as follows: for Count II,
dealing in cocaine, a Class A felony, we impose a 30 year sentence; for
Count III, dealing in cocaine, a Class A felony, we impose a 30 year
sentence; for Count IV, Maintaining a Common Nuisance, a Class D felony, we
impose a one and one-half year sentence. The habitual offender enhancement
of 30 years is applied to Count II as ordered by the trial court. (R. at
687.) As such, Count II is enhanced to 60 years.