**Brian MEAGHER, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

No. 48S00–9804–CR–247.

Supreme Court of Indiana.

April 3, 2000.

Robert W. Rock, Anderson, IN, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Chris Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Brian Meagher was convicted of dealing in cocaine within 1,000 feet of a public park. He was adjudicated a habitual offender and sentenced to 80 years. He appeals his convictions on the grounds that he received ineffective assistance of counsel and that the trial court committed reversible error in ruling on the admissibility of certain testimony. Although we find no ineffective assistance of counsel and affirm the rulings of the trial court, we find that the trial court improperly enhanced Defendant's sentence.

This Court has jurisdiction over this direct appeal because the longest single sentence exceeds 50 years. Ind. Const. art. 7, § 4; Ind. Appellate Rule 4(A)(7).

### Background

Suspecting that Defendant was selling a controlled substance from his apartment, Robert Peckinpaugh contacted Jack Brooks of the Madison County Drug Task Force in June, 1997, and offered to work as a confidential informant. He informed Officer Brooks that he could arrange to purchase crack cocaine from Defendant who, at the time, lived across the street from him.

Peckinpaugh arranged for three separate controlled buys from Defendant.[1] Each transaction transpired in a similar manner. First, Peckinpaugh arranged a drug purchase from Defendant. He then contacted Officer Brooks and informed him of the arrangement. Prior to each transaction, Officer Brooks searched Peckinpaugh to ensure he had no drugs, money or weapons on his person. After being fitted with a wireless transmitter, Peckinpaugh received money from Officer Brooks to purchase the drugs from Defendant. The confidential informant then proceeded to Defendant's apartment and purchased crack cocaine from Defendant. After the transaction and upon his return, Officer Brooks conducted another search at which time Peckinpaugh relinquished the cocaine to Officer Brooks.

During the second and third transactions, after Peckinpaugh gave Defendant the money to purchase crack cocaine, Defendant left his apartment and paged someone from a nearby pay phone. Thereafter, a dark blue Cadillac pulled up in the alley. Defendant reached into his pocket and handed something to a male passenger who gave Defendant something in return.[2] Defendant then delivered a zip-lock baggie with several pieces of crack cocaine to Peckinpaugh.

As a result of these controlled buys, the State charged Defendant with two counts of dealing in cocaine within 1,000 feet of a public park,[3] a Class A felony; aiding, inducing or causing an offense of dealing in cocaine,[4] a Class B felony; and maintaining a common nuisance,[5] a Class D felony. The State also charged Defendant as a habitual offender. A jury convicted

---

**1.** These transactions took place on June 17, 18 and 23, 1997.

**2.** During the second transaction, a female driver and a male passenger arrived at Defendant's apartment building in the blue Cadillac. During the third transaction, the same male passenger served as the sole driver of the blue Cadillac who delivered a package to Defendant.

**3.** Ind.Code § 35–48–4–1(a), (b)(3)(B)(ii) (Supp.1996).

**4.** Id. §§ 35–41–2–4 (1993) and 35–48–4–1(a).

**5.** Id. § 35–48–4–13(b) (1993).

Defendant on all charges and then found that Defendant was a habitual offender.

The trial court imposed the maximum sentence for each dealing in cocaine count, and enhanced one of these sentences by 30 years under the habitual offender statute resulting in an 80–year sentence. The trial court also sentenced Defendant to ten years for aiding in the offense of dealing cocaine and three years for maintaining a common nuisance and ordered those sentences to be served concurrently with the 80–year sentence.

## Discussion

### I

Defendant contends that he was denied his right to effective assistance of counsel guaranteed by the federal and state constitutions.

■■■■ We evaluate Sixth Amendment claims of ineffective assistance of counsel by applying the two-prong test established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See, e.g., Canaan v. State,* 683 N.E.2d 227, 229 (Ind.1997), *cert. denied,* 524 U.S. 906, 118 S.Ct. 2064, 141 L.Ed.2d 141 (1998); *Lowery v. State,* 640 N.E.2d 1031, 1041 (1994), *cert. denied,* 516 U.S. 992, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995). The first prong requires a defendant to demonstrate that counsel's performance fell below an objective standard of reasonableness in light of prevailing professional norms. *See*

*id.* To satisfy the second prong, the defendant must show that the deficient performance was so prejudicial as to deny defendant a fair trial. *See Brown v. State,* 698 N.E.2d 1132, 1139–40 (Ind.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1367, 143 L.Ed.2d 527 (1999). A defendant is denied a fair trial only when a conviction occurs as the result of a breakdown in the adversarial process rendering the trial result unreliable. *See Brown,* 698 N.E.2d at 1140; *Cooper v. State,* 687 N.E.2d 350, 353 (Ind. 1997); *Marshall v. State,* 621 N.E.2d 308, 321 (Ind.1993).

Defendant contends that his counsel's performance was deficient in failing to object to statements made by Officer Brooks. His allegations concerning Officer Brooks's testimony are that: (1) defense counsel failed to object to hearsay evidence when the officer recounted conversations with the confidential informant regarding the controlled buys,[6] (2) defense counsel failed to object to hearsay evidence concerning the officer's validation of the confidential informant's photo identification of Defendant,[7] and (3) defense counsel failed to object to the State's leading question regarding the confidential informant's motivation to participate with the Drug Task Force.[8]

■■■■ The second prong of the *Strickland* test may be determinative of Defendant's allegations. *Strickland,* 466 U.S. at 697,

---

**6.** Here, Defendant directs us to two separate exchanges:

(1) Q: What did [the informant] state to you at that time?
A: He stated that he had talked to [Defendant]. He had set up a buy for later on in the afternoon.
(R. at 191.)

(2) Q: And [the informant] wanted to set up another control buy?
A: Yes he did. He said he had spoke to [Defendant] and once again he had another deal set up for the evening.
(R. at 239.)

**7.** Defendant contests the following exchange:

Q: And which picture did [the confidential informant] pick out?

A: He positively identified photo # 3 as being the subject he knew as [Defendant] who [sic] me purchased cocaine from.
Q: And photo # 3 is a photo of?
A: [Defendant].
Q: The defendant in this cause?
A: Yes.
(R. at 261.)

**8.** The officer testified as follows:

Q: Officer the only other benefit that [the confidential informant] received aside from his fifty dollars ($50.00), would be seeing a drug dealer off the streets.
A: Yes sir.
(R. at 294.)

104 S.Ct. 2052 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."); *Coleman v. State,* 703 N.E.2d 1022, 1028 (Ind.1998). In each complained of instance, the confidential informant provided personal, first-hand knowledge testimony. First, the confidential informant explained when and how he contacted Officer Brooks after arranging each drug purchase with Defendant. Second, during his testimony, the confidential informant explained and confirmed his identification of Defendant in the photo array. Finally, the informant personally testified that his motivation to participate in the controlled buys stemmed from his concern that his nine-year-old daughter was living across the street from a "common crack house."

In light of the confidential informant's testimony, we do not find that Officer Brooks's testimony was so prejudicial as to deny Defendant a fair trial. The complained of evidence was at most cumulative and therefore insufficient to establish prejudice. *See Timberlake v. State,* 690 N.E.2d 243, 260 (Ind.1997) (holding that the defendant failed to demonstrate that he suffered prejudice due to counsel's failure to object to various witness statements finding that the evidence was cumulative and innocuous), *cert. denied,* 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999). Accordingly, Defendant's ineffective assistance of counsel claim fails.

## II

█ Defendant contends that the trial court committed reversible error by curtailing his cross-examination of the confidential informant when Defendant attempted to expose his motivation for participating in the controlled buys.

█ A defendant's Sixth Amendment right of confrontation requires that a defendant be afforded the opportunity to conduct effective cross-examination of state witnesses in order to test their believability. *See Davis v. Alaska,* 415 U.S.

308, 315–16, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974); *Coates v. State,* 534 N.E.2d 1087, 1095 (Ind.1989); *Munn v. State,* 505 N.E.2d 782, 784–85 (Ind.1987). However, this right is subject to the sound discretion of the trial court, which includes limiting repetitive and unduly harassing interrogation. *See id.; see also* Ind. Evidence Rule 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses ... so as to ... protect witnesses from harassment or undue embarrassment."). As the Unites States Supreme Court explained in *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986):

The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him. The right of confrontation, which is secured for defendants in state as well as federal criminal proceedings, *Pointer v. Texas,* 380 U.S. 400 [85 S.Ct. 1065, 13 L.Ed.2d 923] (1965), means more than being allowed to confront the witness physically. *Davis v. Alaska,* 415 U.S. at 315 [94 S.Ct. 1105]. Indeed, '[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.' Id.* at 315–316 [94 S.Ct. 1105] (quoting 5 J. Wigmore, *Evidence* 1395, p. 123 (3d ed.1940)) (emphasis in original). Of particular relevance here, [w]e have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination. *Davis,* [415 U.S.] at 316–17 [94 S.Ct. 1105] (citing *Greene v. McElroy,* 360 U.S. 474, 496 [79 S.Ct. 1400, 3 L.Ed.2d 1377] (1959)). It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause

is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. *Id.* at 678–79, 106 S.Ct. 1431 (emphasis in original). Only a clear abuse of discretion warrants reversal. *Coates,* 534 N.E.2d at 1095.

Defendant contends he wanted to expose the confidential informant's dire financial status B the confidential informant's inability to meet his obligations B so as to reveal his motivation for working with the Drug Task Force.[9] Defendant's offer of proof described the confidential informant's attempt to sell property to his neighbor because he needed the money to pay his utility bill.[10] However, the State introduced evidence that the confidential informant received $50.00 as payment for his participation in each controlled buy. Given that the jury was already presented with evidence that the confidential informant may have had a financial interest in assisting the Drug Task Force, it was within the discretion of the trial court to conclude that further pursuit of his financial status B particularly his inability to pay his utility bill B would have only served to unnecessarily harass or embarrass the witness. As we noted in *Thornton v. State,* "[P]rohibition of all inquiry into the possibility of motive and bias may violate the Confrontation Clause, but trial courts are permitted to impose reasonable limits." 712 N.E.2d 960, 964 (Ind.1999). *Accord Van Arsdall,* 475 U.S. at 679, 106 S.Ct. 1431. Given that the confidential informant testified to the receipt of $50.00 for each controlled buy, the issue of motivation was already before the jury. The trial court did not abuse its discretion in excluding Defendant's proffered evidence for motivation.

### III

■ Defendant next contends that the trial court committed reversible error by permitting a police officer to testify that the male passenger identified in the blue Cadillac pled guilty to the possession of cocaine. Defendant claims that whether this person was convicted for possession of cocaine was not relevant to the outcome of his case.

During cross-examination of Officer Brooks, defense counsel questioned the of-

---

9. Defendant's offer to prove included testimony of the confidential informant's neighbor:

   Q: [D]id [the informant] ever personally try to sell a lawnmower to you?
   A: Yes he did.
   Q: Was this about in June of [1997]?
   A: That would be real close.
   Q: Did he indicate that he had need of money at that time?
   A: Yes he did.
   Q: Okay, did he say what he needed the money for?
   A: Yes he wanted to know if I would be interested in buying his lawnmower because he needed the money to pay his utilities.
   Q: Did he indicate his utilities might be shut off?
   A: Yeah.
   Q: Had you knowledge at one point that he needed money about the time period because some friend[s] were coming in?
   A: I let him do some painting in that front apartment because he told me that he needed some extra money that he had a friend coming in from out of town and they were going to go do a little partying.
   (R. at 521–22.)

10. Defendant also contends that he was not permitted to testify that he asked his previous roommates to move out because they were selling drugs from his apartment. Br. of Appellant, at 15–16. However, after careful review of the record, we find that Defendant was afforded the opportunity to testify to these very facts. Additionally, Defendant complains that he was not permitted to ask the confidential informant whether he sold Defendant his television. However, during a defense offer to prove, the confidential informant denied that this was the case. Further, Defendant testified that the confidential informant "brought stuff over [to his apartment] and traded with people for stuff...." (R. at 537.) As such, we find these two allegations without merit.

ficer regarding this individual's arrest and charges. On re-direct, the State inquired into the resolution of those charges. The officer responded that the individual admitted to the possession of cocaine in open court. Defendant objected arguing that the State's re-direct exceeded the scope of his cross-examination.[11]

■■■ The scope and extent of re-direct examination is within the sound discretion of the trial court. *See Jones v. State*, 600 N.E.2d 544, 547 (Ind.1992); *Dooley v. State*, 428 N.E.2d 1, 6 (Ind.1981); *Kalady v. State*, 462 N.E.2d 1299, 1309 (Ind.1984). Absent an abuse of that discretion, the trial court's ruling will not be disturbed. *See id.* Answering any new matter raised during cross-examination is within the scope of re-direct. *See Jones*, 600 N.E.2d at 547 (citing *Kimp v. State*, 546 N.E.2d 1193, 1195 (Ind.1989), *transfer denied.*). Further, when a party raises a subject on cross-examination, it is permissible for the opposing party to pursue that subject on re-direct examination. *See Kalady*, 462 N.E.2d at 1309 (citing *Woodford v. State*, 273 Ind. 487, 405 N.E.2d 522 (Ind.1980)).

The trial court ruled that the State's question was properly within the scope of re-direct because Defendant had raised the issue of the individual's arrest on cross-examination. We agree. The State only

sought to pursue the issue once it was introduced by Defendant. We have previously held that a party may not open an issue and then seek to have it closed at the party's convenience. *See Kalady*, 462 N.E.2d at 1309; *Fortson v. State*, 269 Ind. 161, 170, 379 N.E.2d 147, 153 (1978); *Baker v. State*, 267 Ind. 643, 645, 372 N.E.2d 1174, 1175 (1978). We do not find that the trial court abused its discretion in permitting the testimony.

## IV

Defendant contends that the trial court's sentencing statement was inadequate to support the imposition of enhanced sentences. The trial court imposed enhanced sentences for Dealing in Cocaine [12] and Maintaining a Common Nuisance.[13] However, Defendant contends that the trial court failed to identify any aggravating circumstances to justify such enhancements and as such, the sentence was improper. We agree.

■■■ In general, the legislature has prescribed standard sentences for each crime, allowing the sentencing court limited discretion to enhance each sentence to reflect aggravating circumstances or reduce the sentence to reflect mitigating circumstances. When the trial court imposes a sentence other than the presump-

---

11. During defense counsel's cross-examination of the police officer, the following colloquy took place:

  Q: Did you arrest this occupant in this blue Cadillac?
  A: Yes sir I did.
  \* \* \*
  Q: Were charges filed?
  A: Yes sir.
  Q: What charges were filed?
  A: Possession of Cocaine, a Class B Felony, because it was enhanced within a thousand feet of a public park.
  (R. at 270–71.)
  On re-direct, the State posed the following questions:
  Q: Officer, defense counsel asked you a question regarding the black male in the Cadillac about his charges. Was there a resolution of those charges?

  A: Yes sir he admitted to possession of cocaine in court.
  (R. at 289.)

12. Defendant was convicted of two counts of dealing in cocaine. The presumptive sentence for Dealing in Cocaine within 1,000 feet of a public park, a Class A, felony is 30 years with not more than 20 years added for aggravating circumstances. *See* Ind.Code § 35–50–2–4 (Supp.1996). The trial court imposed the 50–year maximum sentence on both dealing convictions.

13. The presumptive sentence for Maintaining a Common Nuisance, a Class D felony, is one and one-half years with not more than one and one-half years added for aggravating circumstances. *See* Ind.Code § 35–50–2–7 (1993). The trial court imposed the maximum three-year sentence.

tive sentence, this Court will examine the record to insure that the court explained its reasons for selecting the sentence it imposed. *See Archer v. State,* 689 N.E.2d 678, 683 (Ind.1997) (citing *Hammons v. State,* 493 N.E.2d 1250, 1254 (Ind.1986), *reh'g denied*), *reh'g denied.* The trial court's statement of reasons must include the following components: (1) identification of all significant aggravating and mitigating circumstances; (2) the specific reasons that lead the court to find the existence of each such circumstance; and (3) an articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determining the sentence. *See Mitchem v. State,* 685 N.E.2d 671, 678 (Ind.1997) (citing *Jones v. State,* 675 N.E.2d 1084, 1086 (Ind.1996)).

■ Here, the sentencing statement is devoid of any reasoning justifying an enhanced sentence.[14] The trial court failed to identify any significant aggravating circumstances or point to any specific facts and reasons that might have led the trial court to find the existence of an aggravating circumstance. The failure of the trial

court to explain its reasons for imposing enhanced sentences was improper.[15]

Because the trial court found no significant aggravating or mitigating circumstances, we conclude that the imposition of presumptive sentences for each guilty offense is appropriate. We affirm the habitual offender enhancement and the trial court's finding that the sentences on the four counts should be served concurrently. Accordingly, we now impose upon Defendant a sentence of 60 years.[16]

## Conclusion

Defendant's convictions are affirmed; however, the cause is remanded to the trial court to amend the judgment in accordance with footnote sixteen of this opinion.

SHEPARD, C.J., and DICKSON, BOEHM and RUCKER, JJ., concur.

14. We note that the trial court commented on the fact that Defendant dealt cocaine within 1,000 feet of a public park. (R. at 685.) The offense of dealing in cocaine is elevated to a class A felony when committed within 1,000 feet of a public park. *See* Ind.Code § 35–48–4–1(b)(3)(B)(ii). As such, we consider the fact that Defendant dealt cocaine within 1,000 feet of a public park a material element of the offense. *Accord Walker v. State,* 668 N.E.2d 243, 244–46 (Ind.1996) (by implication) (DeBruler, J., dissenting) (concurring with majority that dealing cocaine within 1,000 feet of a school constitutes a material element of the crime), *reh'g denied.* "The mere fact which comprises a material element of a crime may not also constitute an aggravating circumstance to support an enhanced sentence, but the *particularized individual circumstances* may constitute a separate aggravating circumstance." *Townsend v. State,* 498 N.E.2d 1198, 1201 (Ind.1986) (emphasis added); *Ector v. State,* 639 N.E.2d 1014, 1015 (Ind. 1994); *Johnson v. State,* 687 N.E.2d 345, 347 (Ind.1997). Here, however, the trial court offered no particularized circumstance with which to substantiate an enhanced sentence

other than the mere recitation of this element B that is, the trial court failed to provide a reasoned application of detailed facts to an aggravating circumstance.

15. The State acknowledges: "The State recognizes that the trial court enhanced Defendant's sentences for Dealing in Cocaine and Maintaining a Common Nuisance without indicating either during the sentencing hearing or in its order what aggravating circumstances it found." Br. of Appellee, at 11.

16. The ten-year presumptive sentence for Count I remains unchanged. Defendant's individual sentences are revised as follows: for Count II, dealing in cocaine, a Class A felony, we impose a 30 year sentence; for Count III, dealing in cocaine, a Class A felony, we impose a 30 year sentence; for Count IV, Maintaining a Common Nuisance, a Class D felony, we impose a one and one-half year sentence. The habitual offender enhancement of 30 years is applied to Count II as ordered by the trial court. (R. at 687.) As such, Count II is enhanced to 60 years.