**Jason Michael BEAR, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 35A02–0107–CR–502.

Court of Appeals of Indiana.

July 2, 2002.

Susan K. Carpenter, Public Defender of Indiana, Amy E. Karozos, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

A jury convicted Jason Michael Bear of child molesting as a Class B felony.[1] He was sentenced to fourteen years' imprisonment, with four years suspended and four years of probation. He now appeals, raising the following restated issues for our review:

I. Whether the trial court erred when it allowed the mother of a four-year-old prosecuting witness to testify about the prosecuting witness's out-of-court statements concerning sexual acts Bear performed on her.

II. Whether the trial court erred in refusing Bear's tendered instruction that the jury could acquit him based on the prosecuting witness's uncorroborated testimony.

III. Whether the trial court committed fundamental error by giving an instruction on child molesting by deviate sexual conduct that failed to correctly instruct the jury on the required mens rea.

IV. Whether the evidence was sufficient to convict Bear of child molesting by deviate sexual conduct.

V. Whether the sentencing factors cited by the trial court supported Bear's enhanced sentence.

We affirm.

---

1. See IC 35–42–4–3(a).

## FACTS AND PROCEDURAL HISTORY

In the spring of 2000, Bear was fifteen years old. On the evening of March 10, 2000, Bear and his younger brother babysat for four-year-old J.W. and her two-year-old brother. J.W. is the daughter of Kaycy—the fiancée of Bear's cousin Mike. When Mike and Kaycy left for the evening, J.W. wore a zip-up pink sleeper over a pair of underpants.

The couple returned home at two o'clock in the morning and found Bear and J.W. asleep on their bed in the master bedroom. J.W. was wearing only her underpants. The couple moved Bear to another room and left J.W. in their bed. When Kaycy awoke the next morning, Bear had left the house.

Later that day, Kaycy questioned Bear as to why J.W. had not been wearing her sleeper when they found her on their bed, and Bear responded that J.W. had had an "accident." *Appellant's Appendix* at 257. Kaycy thought this explanation was odd because J.W. had been toilet trained for two years and had not had an accident for some time. Before laundering J.W.'s sleeper and her underpants, Kaycy inspected them and noted that there was no smell of urine. Kaycy then spoke with J.W., who related that Bear had molested her on the night Bear babysat. Kaycy took J.W. to the doctor and called the police.

On April 10, 2000, the State filed a Petition Alleging Delinquency against Bear. On June 16, 2000, after a hearing, the trial court waived juvenile jurisdiction and allowed Bear to be tried as an adult. The State then charged Bear with two counts of child molesting—one as a Class B felony and the other as a Class C felony.[2]

At trial, J.W. testified that Bear "did bad touches" on the night he babysat. *Id.* at 298. She further testified that the bad touches happened on her mother's bedroom floor and that they involved Bear licking her "pooty." *Id.* at 299–301. J.W. testified that she uses her "pooty" to pee. *Id.* at 300. Kaycy testified that J.W. uses the term "pooty" to refer to her "vaginal area." *Id.* at 261. On re-direct, and over Bear's objection, Kaycy testified that J.W. had reported incidents of oral sex and fondling on the night of March 10. Bear did not testify, and the defense presented no witnesses.

Over Bear's objection, the trial court refused to give his tendered instruction that he could be acquitted based on the child's uncorroborated testimony, but did give the State's instruction that the child's uncorroborated testimony could support a finding of guilt. The court also instructed that to convict Bear, the State must prove that he knowingly or intentionally performed or submitted to deviate sexual conduct with J.W. when she was a child under fourteen years of age. *Id.* at 129, 386. Bear did not object.

Bear made a motion for a judgment of acquittal on the two charges, and the court granted the motion only as to the Class C felony. The jury found Bear guilty of Class B felony child molesting. During the sentencing hearing, the trial court identified seven aggravating circumstances and two mitigating circumstances and sentenced him to ten years' imprisonment, with four years added for aggravating circumstances. Those four years were then suspended, and the court ordered Bear to

---

**2.** The Class B felony was charged under IC 35–42–4–3(a) and the Class C felony was charged under IC 35–42–4–3(b).

be placed on probation for four years after his release. He now appeals.

## DISCUSSION AND DECISION

*I. Admission of Mother's Testimony*

■ Bear first argues that the trial court committed reversible error when it allowed Kaycy to testify about J.W.'s statements to her concerning the acts of fondling and oral sex that Bear committed on the night he babysat. Bear argues that, because these statements were out-of-court statements made by J.W. to Kaycy and repeated by Kaycy at trial to prove the truth of the matter asserted, they constituted inadmissible hearsay. *Appellant's Brief* at 11. The context of the challenged testimony is relevant to our determination.

Here, on direct examination, Kaycy testified that Bear babysat until two o'clock in the morning on March 11 and that it was four days later that she questioned J.W. about what had happened on the night Bear babysat. She further testified that, upon hearing what J.W. had to say, she called the doctor and the police.

On cross-examination, defense counsel Donald Swanson questioned Kaycy about the number of days that passed before J.W. told her about the child molesting. The questioning went as follows:

Q And did [Bear] say that he had [J.W.] change her underwear herself?

A No.

Q No. Uh, [J.W.] didn't mention anything to you about it the next day?

A No.

Q Uh, didn't mention anything about any kind of sexual activity or—

A (Inaudible)—

Q —fondling or (inaudible)?

A No.

Q So (inaudible) that would be the 12th. Then the 13th she didn't say anything about it. And the 14th she didn't say anything at all about it, (inaudible). And then March 15 uh, you were in the bathroom and she relates the incident (inaudible)?

A Yes.

*Appellant's Appendix* at 268–69.

On re-direct, deputy prosecutor Jamie Groves and Kaycy engaged in the following exchange:

Q There also—there was also a statement Mr. Swanson asked you if your daughter related an incident of fondling to you in the bathroom. Is that all she related to you is an incident of fondling in the bathroom?

A No.

Q Did she—what else did she relate to you?

A Oral sex.

MR. SWANSON: Judge, I'm going to be—object. That's uh, hearsay and it's beyond the scope of uh, my cross-examination.

MR. GROVES: I would ask her—or be able to—at least to ask what other kind of touching occurred. Mr. Swanson asked if she related an incident of fondling, which is in and of itself hearsay to have her explain the whole extent of the touching I believe is a complete answer (inaudible).

JUDGE MCINTOSH: I believe the question is within the scope of the cross-examination and you may rephrase the question.

Q What other type of touching besides fondling did [J.W.] relate to you?

MR. SWANSON: Judge, I would object, it's hearsay.

MR. GROVES: May I continue Judge?

JUDGE MCINTOSH: You may.

. . .

Q Just continue.

A She told me that there was also oral sex that was performed.

*Id.* at 274–76.

■ The scope and extent of re-direct examination is within the sound discretion of the trial court, and a trial court's ruling will not be disturbed absent an abuse of that discretion. *Meagher v. State,* 726 N.E.2d 260, 266 (Ind.2000); *Jones v. State,* 600 N.E.2d 544, 547 (Ind.1992). Answering any new matter raised during cross-examination is within the scope of re-direct. *Meagher,* 726 N.E.2d at 266; *Jones,* 600 N.E.2d at 547. Further, "when a party raises a subject on cross-examination, it is permissible for the opposing party to pursue that subject on re-direct examination." *Meagher,* 726 N.E.2d at 266; *see Jones,* 600 N.E.2d at 547; *Kalady v. State,* 462 N.E.2d 1299, 1309 (Ind.1984). Our supreme court has held that a defendant may not open an issue and have it closed at his convenience. *Meagher,* 726 N.E.2d at 266; *Kalady,* 462 N.E.2d at 1309.

Kaycy's answers on re-direct were elicited to fully respond to issues that had been raised by Bear. The State questioned Kaycy on the type of sexual activity or fondling only after Bear had raised that issue for the first time during Kaycy's cross-examination. Furthermore, the questioning on re-direct was limited, and Kaycy did not elaborate on her conversation with J.W. The trial court ruled that the State's questions were properly within the scope of the re-direct. We find that the trial court did not abuse its discretion in permitting the testimony.

## II. Jury Instruction Concerning Uncorroborated Testimony

■ Bear next contends that the trial court erred in giving an instruction on uncorroborated testimony over his objection. The standard by which we review challenges to jury instructions affords great deference to the trial court. *Lewis v. State,* 759 N.E.2d 1077, 1080 (Ind.Ct. App.2001), *trans. denied* (2002); *Wooden v. State,* 757 N.E.2d 212, 214 (Ind.Ct.App. 2001), *trans. denied* (2002). In reviewing a trial court's decision to give or refuse tendered instructions, this court considers: (1) whether the instruction correctly states the law; (2) whether there was evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions that are given. *Chambers v. State,* 734 N.E.2d 578, 580 (Ind. 2000); *Wooley v. State,* 716 N.E.2d 919, 926 (Ind.1999). Jury instructions are not to be considered in isolation, but as a whole, and with reference to each other. *Maslin v. State,* 718 N.E.2d 1230, 1233 (Ind.Ct.App.1999), *trans. denied* (2000). Therefore, the trial court's ruling will not be reversed unless the instructional error is such that the charge to the jury misstates the law or otherwise misleads the jury. *Lewis,* 759 N.E.2d at 1080; *Wooden,* 757 N.E.2d at 214.

Bear and the State each tendered an instruction concerning the weight to be accorded the uncorroborated testimony of J.W., the prosecuting witness. Bear's instruction provided: "A Defendant may be found *not guilty* of child molesting on the uncorroborated testimony of the victim." [3]

3. The tendered instruction originally provided, "A Defendant may be found not guilty of child molesting on the uncorroborated testimony of the Defendant himself." A handwritten notation that changed the words "Defendant himself" to "victim" then altered the instruction. The words "Defendant himself" were inapplicable because Bear did not testify. The word victim must therefore have been inserted either by Bear or without his objection at the time the instruction was tendered.

*Appellant's Appendix* at 120 (emphasis added). In contrast, the State's instruction provided: "You may *convict* the Defendant upon the uncorroborated testimony of the victim." *Id.* at 139 (emphasis added). The trial court refused Bear's instruction, over his objection, and read the State's version to the jury as Final Instruction 12A. Bear claims that the trial court erred both in refusing his tendered instruction and in giving Instruction 12A because it unfairly emphasized the alleged victim's testimony and gave it unwarranted credibility.

Tendering different versions of the uncorroborated testimony instruction reveals the parties' agreement that the evidence supported the giving of such an instruction. Furthermore, Indiana courts have previously upheld instructions like 12A, which provide that a defendant may be found guilty upon the uncorroborated testimony of the prosecuting witness. *See Lottie v. State,* 273 Ind. 529, 532–33, 406 N.E.2d 632, 636 (1980) (instruction given in rape conviction upheld as accurately reciting Indiana law); *Maslin,* 718 N.E.2d at 1233–34 (instruction given in rape conviction upheld). This instruction has also been approved when used in trials for child molesting. *Hicks v. State,* 631 N.E.2d 499, 502 (Ind.Ct.App.1994), *trans. denied* (instruction given in child molesting conviction upheld); *Butcher v. State,* 627 N.E.2d 855, 860–61 (Ind.Ct.App.1994) (same); *Mullins v. State,* 486 N.E.2d 623, 628–29 (Ind.Ct.App.1985) (same).

In *Burnett v. State,* 736 N.E.2d 259, 261 (Ind.2000), our supreme court upheld an instruction similar to 12A over a defendant's challenge that the instruction over-

emphasized the testimony of the victim.[4] The court approved the use of the instruction on the basis that the victim was the only testifying witness to the crime, thus making it unrealistic that other evidence could corroborate the testimony. *Burnett,* 736 N.E.2d at 261 (citing *Madden v. State,* 549 N.E.2d 1030, 1033 (Ind.1990)) (instruction given in attempted rape and burglary conviction upheld). In this case, as in *Burnett,* J.W. was the only testifying eyewitness and there were no other instructions on point.

The substance of Bear's tendered instruction was that Bear should be acquitted if the jury did not believe J.W.'s testimony, i.e., Bear is innocent until proven guilty by credible testimony. The trial court gave the jury general preliminary and final instructions concerning the presumption of the defendant's innocence, the State's burden of proof, and the credibility of witnesses. It also informed the jury that:

> [A] person charged with the commission of a crime cannot be compelled to testify and is under no duty or obligation to testify.
>
> The fact that the Defendant did not testify raises no presumption of any kind against [him]. It shall not be commented upon, referred to, or in any manner considered by the jury in determining the guilt or innocence of the Defendant.

*Appellant's Appendix* at 136. These instructions adequately conveyed the substance of Bear's instruction to the jury.

■ In his reply brief, Bear raises two additional arguments, first, that the use of the word victim invades the province of the

---

4. At trial, Burnett was found guilty of various crimes including auto theft, confinement, and aggravated battery. Although recognizing that the version of the crime was relayed to the jury through the testimony of a police officer, our supreme court found that the instruction on uncorroborated testimony was not especially influential. *Burnett,* 736 N.E.2d at 261.

jury, and, second, that the term "uncorroborated" may be misunderstood by the jury to give the witness's testimony additional credibility. *Appellant's Reply Brief* at 6. Quoting Justice Dickson in a recent dissent from the denial of transfer in an unpublished memorandum decision, Bear contends that "[b]y referring to the State's child-witness as 'the victim,' the instruction 'implies to the jury that the trial judge accepts as truthful the complaining witness's contentions regarding the alleged incident,' and thereby invades the province of the jury." *Appellant's Reply Brief* at 6 (quoting *Carie v. State*, 761 N.E.2d 385, 385 (Ind.2002) (Dickson, J., dissenting)). Although recognizing that a dissent from denial of transfer is not binding precedent, we note that the instructions of both Bear and the State referred to the "uncorroborated testimony of the *victim*." *Appellant's Appendix* at 120, 139 (emphasis added). Having tendered an instruction that includes the same word to which Bear now objects, he cannot complain of the State's use of the word "victim." *See Vandeventer v. State*, 459 N.E.2d 1221, 1222 (Ind.Ct. App.1984) (citing *Stamper v. State*, 260 Ind. 211, 294 N.E.2d 609 (1973) with approval for the proposition that a defendant may not profit from obtaining an erroneous instruction and thereafter claiming error). Even so, we point out that the alternate use of the words witness, prosecuting witness, eyewitness or the like would be less likely to support the argument that the word invades the province of the jury.

Bear further asserts that the "meaning of the term 'uncorroborated' may not be correctly understood by the lay juror, who may improperly 'interpret this instruction to mean that baseless testimony should be given credit and that they should ignore inconsistencies, accept without question the witness's testimony, and ignore evidence that conflicts with the witness's version of events.' " *Id.* (quoting *Carie*, 761

N.E.2d at 386 (Dickson, J. dissenting)). Justice Dickson's reasoning is sound, but does not apply to the facts before us. At trial, Bear rested without presenting any evidence that was either inconsistent or conflicted with J.W.'s testimony. J.W. testified that Bear committed a certain act, and counsel's cross-examination implied that Bear did not commit the act. The jury, as fact finder, had to determine what it believed to be true.

Instruction 12A, when considered with the instructions as a whole, did not unfairly focus attention on J.W.'s testimony. *Burnett*, 736 N.E.2d at 261. The trial court did not err by using instruction 12A and refusing Bear's instruction.

### III. Jury Instruction on Child Molesting by Deviate Sexual Conduct

■ Bear next argues that the trial court's instruction on the elements of child molesting by deviate sexual conduct constituted fundamental error because it included an incorrect mens rea. At trial, Bear failed to object to the child molesting instruction. Ordinarily, failure to make a timely objection to an instruction waives that issue for appellate review. *Wooden*, 757 N.E.2d at 215; *Lampkins v. State*, 749 N.E.2d 83, 85 (Ind.Ct.App.2001), *trans. denied*. However, to avoid waiver, Bear claims that this error was fundamental.

The trial court's Final Instruction 4A provided as follows:

The crime of child molesting is defined by statute as follows:

A person who, with a child under fourteen (14) years of age, performs or submits to deviate sexual conduct, commits child molesting, a Class B felony.

To convict the Defendant, the State must have proved each of the following elements:

The [D]efendant

1. Knowingly or intentionally performed or submitted to deviate sexual conduct with [J.W.]

2. When [J.W.] was a child under fourteen (14) years of age.

If the State failed to prove each of these elements beyond a reasonable doubt, you should find the Defendant not guilty.

If the State did prove each of these elements beyond a reasonable doubt, you should find the Defendant guilty of child molesting, a Class B felony.

*Appellant's Appendix* at 129 (citing then-existing Criminal Pattern Jury Instruction No. 3.33).

Bear first contends that the trial court erred in failing to "instruct the jury that intent to arouse or satisfy sexual desires was a necessary element." *Appellant's Brief* at 15–16. Bear was charged with child molesting under IC 35–42–4–3(a). In *Jaco v. State,* 760 N.E.2d 176 (Ind.Ct.App. 2001), *trans. pending,* our court analyzed the difference between the crime of child molesting charged under IC 35–42–4–3(a) and (b). Although both statutes involve a victim under the age of fourteen, the court explained that the crime under IC 35–42–4–3(b) entails the fondling or touching of the child "with intent to arouse or satisfy the sexual desires," while the crime under IC 35–42–4–3(a) entails sexual intercourse or deviate sexual conduct with the child, making no mention of an intent to arouse. *Jaco,* 760 N.E.2d at 181.

As this court explained in *Jaco,* unlike fondling or touching in which "intent to arouse or satisfy sexual desires is not inherent in touching a child," *Id.,* under IC 35–42–4–3(a) the element of intent to arouse or satisfy sexual desires is not explicitly required because "such an intent is implicit in the use of the terms '*sexual intercourse*' and '*deviate sexual conduct.*' " [5] *Id.* We agree with the State's argument that an act of oral sex with a child "inherently includes criminal intent because there can be no legal, valid, or medical reason" for the act. *Appellee's Brief* at 12. It was, therefore, not error for the trial court to omit this language from its instructions.

■ Bear also argues that the instructions as a whole failed to inform the jury that it must find Bear acted intentionally in order to convict him of child molesting. At the time Bear was convicted, the criminal jury instruction pertaining to IC 35–42–4–3(a) provided that to convict a defendant, the State must prove that he "knowingly or intentionally" performed or submitted to deviate sexual conduct with a child under fourteen years of age. 1 *Indiana Pattern Jury Instructions (Criminal)* 3.33 (2d ed. 1999 supplement).[6] Relying on our court's reasoning in *Louallen v. State,* 755 N.E.2d 672 (Ind.Ct.App.2001), Bear argues that, to convict him, the State must prove that he "intentionally" performed or submitted to deviate sexual conduct and that the failure to instruct on this

---

5. In support of this conclusion, the court reasoned that "if an intent to arouse or satisfy the sexual desire was not inherent in the definition of deviate sexual conduct, medical examinations, such as a colonoscopy or gynecological examination, would arguably fit within the definition." *Jaco,* 760 N.E.2d at 181.

6. In October of 2001, the mens rea of Criminal Pattern Jury Instruction No. 3.33 was changed from "knowingly or intentionally" to just "intentionally." The language of the amended jury instruction requires the State to prove that the defendant "intentionally" performed or submitted to deviate sexual conduct. The instruction was amended in response to our decision in *Louallen v. State,* 755 N.E.2d 672 (Ind.Ct.App.2001).

intentional mens rea constitutes fundamental error. *Appellant's Brief* at 16–17.

To support his claim of fundamental error, Bear cites to *Metcalfe v. State,* 715 N.E.2d 1236, 1237 (Ind.1999) and *Taylor v. State,* 616 N.E.2d 748, 749 (Ind.1993), cases in which our supreme court concluded that the inclusion of the word "knowingly" in an attempted murder instruction that required an intentional act constituted fundamental error. The "inherent ambiguity in attempted murder prosecutions and the need to instruct juries precisely as to the correct level of culpability," *Williams v. State,* 737 N.E.2d 734, 740 (Ind.2000), convince us that the improper use of the word "knowingly" in an attempted murder instruction should, with few exceptions, constitute fundamental error.[7] However, the same blanket conclusion of fundamental error cannot be reached in a case of child molest by deviate sexual conduct.

 Fundamental error exists only when there are substantial blatant violations of basic and elementary principles of due process, and the harm or potential for harm cannot be denied. *Hopkins v. State,* 759 N.E.2d 633, 638 (Ind.2001). The error "must be so prejudicial to the rights of a defendant as to make a fair trial impossible." *Id.* Bear argues that the trial court's failure to instruct the jury that he must have acted *intentionally* was fundamental error; yet, he fails to provide us with any argument of how he was prejudiced by the instruction. J.W. testified that Bear licked her "pooty." Bear offered no explanation that this was an innocent act or that J.W. misunderstood his actions. This is not an arm around the shoulder that a child misinterprets as fondling. When a jury learns that a fifteen-year-old boy licked the vaginal area of a four-year-old girl, if the evidence is credible, it defies common sense that any conclusion other than that the act was done intentionally can be reached. "The element of intent of child molesting may be established by circumstantial evidence and inferred from the actor's conduct and the natural and usual sequence to which such conduct usually points." *Cruz Angeles v. State,* 751 N.E.2d 790, 797 (Ind.Ct.App. 2001), *trans. denied.* The evidence showed that Bear acted intentionally, and there is no likelihood that he was convicted on a lesser standard of culpability.

### IV. Sufficiency of the Evidence

 Bear next contends that there is insufficient evidence to support his conviction for the child molesting of J.W. by deviate sexual conduct. When reviewing the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Carter v. State,* 754 N.E.2d 877, 879 (Ind.2001); *Cruz Angeles,* 751 N.E.2d at 797. We consider only the evidence most favorable to the verdict, together with all reasonable inferences to be drawn there from. *Craig v. State,* 730 N.E.2d 1262, 1265–66 (Ind.2000); *Cruz Angeles,* 751 N.E.2d at 797. We will affirm a conviction if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Downey v. State,* 726 N.E.2d 794, 796 (Ind.Ct.App. 2000), *trans. denied.*

Bear appeals his conviction for child molesting by deviate sexual conduct under IC 35–42–4–3(a). On this charge, the State

---

7. Our supreme court has established exceptions to the rule of finding fundamental error where "knowingly" was improperly used in an attempted murder instruction. Under these exceptions the supreme court has affirmed a conviction when (1) the intent of the perpetrator was not central to the issue at trial, (2) the instructions as a whole sufficiently suggested the requirement of intent to kill, (3) or both. *Williams,* 737 N.E.2d at 737.

was required to prove that Bear (1) performed or submitted to (2) deviate sexual conduct (3) with a child under the age of fourteen. IC 35–42–4–3(a). Under the facts of this case, deviate sexual conduct is an act involving "a sex organ of one person and the mouth or anus of another person." IC 35–41–1–9.

J.W. testified that Bear licked her "pooty," a word Kaycy testified J.W. used to describe her "vaginal area." Bear argues that the description of the act was not specific enough for the trier of fact to reasonably conclude beyond a reasonable doubt that deviate sexual conduct took place, that is, that Bear's mouth touched J.W.'s sex organ. Citing *Spurlock v. State*, 675 N.E.2d 312 (Ind.1996), Bear admits that a detailed anatomical description is unnecessary and undesirable, but asserts that, where there is no external evidence of the act, the child's testimony has to be detailed enough to prove the act. *Appellant's Reply Brief* at 3.

Bear cites to *Downey* and *Shackelford v. State*, 622 N.E.2d 1340 (Ind.Ct.App.1993) to support his argument. In *Shackelford*, the defendant was charged with child molesting by committing deviate sexual conduct with his seven-year-old grandson, J.S., and five-year-old granddaughter, N.S. The acts committed against J.S. clearly met the standard of deviate sexual conduct and were not appealed. During the trial, N.S. testified that Shackelford kissed her on her "private parts" and touched his penis to her "private parts," which she described as her breasts, groin, and buttocks. *Shackelford*, 622 N.E.2d at 1342. Our court held that because the child had not specified which "private parts" were involved, the evidence was insufficient for the jury to determine that Shackelford had engaged in an act involving his penis and N.S.'s anus or his mouth and her genitalia or anus.

*Shackelford* can be distinguished. J.W. was more specific than N.S. and alleged that Bear licked her "pooty"—a term she used to refer to her vaginal area—not all of her "private parts."

In *Downey,* the defendant was charged with child molesting by deviate sexual conduct involving his sex organ and the child's anus. The evidence at trial and presented on appeal was that the defendant rubbed his penis between the child's "buttocks." *Downey,* 726 N.E.2d at 797. Referring to the plain meaning of the words anus and buttocks, our court concluded that the two were not the same and that proof of contact with the buttocks was insufficient to prove contact with the anus. *Id.*

While *Downey* is helpful in instructing us as to the careful manner with which we must review the evidence before us, our case does not hinge on the definition of anus but instead on whether the phrase "vaginal area" is sufficient to describe the female "sex organ." Following the reasoning in *Rupert v. State,* 717 N.E.2d 1209 (Ind.Ct.App.1999), we hold that it is.

In *Rupert,* the defendant was charged under IC 35–42–4–3(a) with deviate sexual conduct for the act of "nibbl[ing] and suck[ing] on the scrotum of his girlfriend's one-year-old child." 717 N.E.2d at 1210. He was found guilty of performing an act that involved his mouth and the sex organ of the child. The issue on appeal was whether the scrotum is a "sex organ" as contemplated by IC 35–41–1–9. It was the defendant's position that the term sex organ, as it relates to a male, refers only to the penis. *Rupert,* 717 N.E.2d at 1210.

Rupert cited the "legislature's definition of sexual intercourse as 'an act that includes any penetration of the female sex organ by the male sex organ' in support of his argument that the legislature intended to limit the definition of male sex organ to

the penis." *Rupert*, 717 N.E.2d at 1210. The court noted the importance of both giving words their ordinary and plain meaning and applying them in a logical manner consistent with the statute's underlying policy and goals. *Id.* Quoting from a medical dictionary and commenting that the scrotum, in and of itself, is not an organ at all, the court nevertheless concluded that the scrotum is an integral part of a male's external genitalia. The court concluded that it "defies common sense to believe that the legislature intended to criminalize the oral stimulation of the penis of a child under fourteen years of age but did not intend to criminalize the oral stimulation of the scrotum of that same child." *Id.* at 1210. Persuaded by this reasoning, we find that it likewise defies common sense that the legislature intended to criminalize the oral stimulation of the vagina without also criminalizing the oral stimulation of the vaginal area. *See Cooper v. State*, 714 N.E.2d 689 (Ind.Ct.App. 1999), *trans. denied* (although the issue on appeal was not sufficiency of the evidence, the court affirmed a conviction for deviate sexual conduct where evidence showed that defendant kissed victim's vaginal area).

■ The jury was able to consider the following evidence. J.W.'s parents left her in Bear's care for an evening wearing a pink sleeper. When they returned Bear and J.W. were asleep on the same bed, and J.W. was wearing only her underpants. J.W. testified that Bear had licked her "pooty," and her mother confirmed that "pooty" is the word J.W. uses to describe her "vaginal area." *Appellant's Appendix* at 261, 299–300. Indeed, J.W. testified that she uses her "pooty" to pee. A conviction for child molesting may rest solely upon the uncorroborated testimony of the victim, despite the child's limited sexual vocabulary or unfamiliarity with anatomi-

cal terms. *See Heeter v. State*, 661 N.E.2d 612, 616 (Ind.Ct.App.1996) (testimony that defendant kissed her private parts and that the private area is between your legs and covered by underwear was reasonable for the jury to infer that defendant placed his mouth on the vagina of the victim). We will not impinge on the jury's responsibility to assess credibility and weigh the evidence in this case. The evidence was sufficient for the jury to find Bear guilty of child molesting for having committed deviate sexual conduct.

### V. Sentencing

■ The presumptive sentence for the crime of child molesting as a Class B felony is ten years, with not more than ten years added for aggravating circumstances and not more than four years subtracted for mitigating circumstances. IC 35–50–2–5. The trial court sentenced Bear to ten years' imprisonment, with four years added for aggravating circumstances. Those four years were then suspended, and the court ordered Bear to be placed on probation for the four years following his release. In addition, the court ordered Bear to register as a sex offender and to attend and complete a program of counseling. The court further ordered that Bear should make restitution, if any, to the victim, have no further contact with the victim and her family, and refrain from having contact with any child under 18 without adult supervision. *Appellant's Appendix* at 416.

■ Sentencing decisions are committed to the sound discretion of the trial court, and "we 'will reverse a sentence only upon a showing of manifest abuse of discretion.'" *Allen v. State*, 722 N.E.2d 1246, 1250 (Ind.Ct.App.2000) (quoting *Ault v. State*, 705 N.E.2d 1078, 1081 (Ind.Ct. App.1999)). When a trial court imposes a sentence other than the presumptive sen-

tence, we will examine the record to ensure that the court explained its reasons for selecting the sentence it imposed. *Archer v. State*, 689 N.E.2d 678, 683 (Ind. 1997). The trial court's statement of reasons must: (1) identify all significant aggravating and mitigating circumstances; (2) state the specific reason why each circumstance is determined to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances. *Id.; Allen*, 722 N.E.2d at 1250–51.

At Bear's sentencing hearing, Bear admitted that on the date of the alleged offenses, he was on parole from the Indiana Boys School for the offense of armed robbery and that, while out on bond for the child molesting charge, he committed a new crime. *Appellant's Appendix* at 410. During the hearing, the trial court made the following comment:

> In sentencing the defendant the court has considered the factors made mandatory by the statute as follows: 1) the risk that the defendant would commit another crime; 2) the nature and circumstances of the crime committed; 3) the defendant's prior criminal record, character and condition; (inaudible) the victim of the crime was less than twelve years of age; statements made by the victim.
>
> The court finds the following aggravating factors: The defendant has a history of criminal or delinquent activity; the defendant is in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility; the victim of the crime was less than twelve years of age; the exhausting attempts of rehabilitating the defendant since the age of seven; the fact he was on probation when he committed this crime; the fact that when he was on bond on—for this crime, awaiting trial,

he committed another crime; the fact that he was in a position of trust with a four-year-old child.

> Mitigating circumstances without question are the age of the defendant and the long history of mental health treatment.

*Id.* at 415–16.

Bear contends that several of the aggravating factors relied upon by the court are improper to enhance his sentence. Specifically, he argues that the court should not have enhanced his sentence based on the considerations that he was in need of correctional or rehabilitative treatment, the age of the victim, or his prior criminal or delinquent activity. *Appellant's Brief* at 18–20.

■■■■ We first address the court's conclusion that it is an aggravating circumstance that "the defendant is in need of correctional or rehabilitative treatment that can best be provided by commitment to a penal facility." *See* IC 35–38–1–7.1(b)(3). Both parties agree that, when a sentencing court lists this aggravator, the court must explain why incarceration should exceed the presumptive sentence. *Appellee's Brief* at 15 (citing *Wooley*, 716 N.E.2d at 930). Although admitting that the trial court did not explicitly explain its reliance on this factor, the State argues that the court's recognition that " 'exhausting attempts of rehabilitating' Defendant since he was seven years old" supports this aggravator. *Appellee's Brief* at 15–16 (quoting *Appellant's Appendix* at 415). We disagree and find this statement, without additional explanation, is insufficient to support the imposition of an aggravated sentence. As our supreme court explained in *Wooley*, 716 N.E.2d at 930, "[e]very executed sentence entails incarceration. The question is whether the extended incarceration is appropriate." There is no evidence to support the conclusion that

Bear is in need of treatment beyond the presumptive term. *See Id.* Here, the trial court merely recited the statutory language of the aggravator and provided no specific or individualized statement to support the conclusion that Bear was in need of time in a penal institution in excess of the presumptive sentence. *See Jimmerson v. State,* 751 N.E.2d 719, 723 (Ind.Ct. App.2001). We agree this aggravator was improperly applied.

■ Bear next challenges the trial court's finding that the victim of the crime was less than twelve years of age, arguing that because age is an element of the crime of child molesting, it cannot also enhance Bear's sentence. Our supreme court has stated that a factor constituting a material element of an offense cannot be used as an aggravating circumstance. *McCann v. State,* 749 N.E.2d 1116, 1120 (Ind.2001); *Angleton v. State,* 714 N.E.2d 156, 160 (Ind.1999) (citing *Johnson v. State,* 687 N.E.2d 345, 347 (Ind.1997)), *cert. denied,* 529 U.S. 1132, 120 S.Ct. 2012, 146 L.Ed.2d 961 (2000); *see also Reynolds v. State,* 575 N.E.2d 28, 32 (Ind.Ct.App.1991), *trans. denied* (victim's age that comprises a material element of a crime, may not also support an enhanced sentence). The State, however, argues that a trial court may properly consider as aggravating circumstances the particularized circumstances of the factual elements, including age. *Stewart v. State,* 531 N.E.2d 1146, 1150 (Ind.1988).

The State cites to *Stewart* as support for its claim that the trial court's reference to J.W.'s age was appropriate. We recognize that the victim in *Stewart* was three years old, but find the facts of that case distinguishable from the facts before us. In *Stewart,* "the trial court noted that the victim was not only a minor, but one of tender age, he was handicapped, and appellant's acts caused the child[ ] serious

emotional harm." *Stewart,* 531 N.E.2d at 1150. Our supreme court concluded that these comments "showed particularized individual circumstances which constitute separate aggravating factors." *Id.* No such showing has been made here. The court, apparently citing to language in IC 35–38–1–7–.1(a)(4), merely stated, "the victim of the crime was less than twelve (12) years of age." *Appellant's Appendix* at 412, 415. The trial judge listed no other considerations pertaining to age. There has been no showing of the particularized individual circumstances required under *Stewart* to allow the age of J.W. to constitute a separate aggravating factor.

■ Bear's final argument is that the trial court improperly enhanced his sentence on the basis that Bear had a history of criminal or delinquent activity. Bear contends that the court cannot use his juvenile record as an aggravating circumstance because the record does not contain details of the circumstances surrounding his arrests and adjudications. *Appellant's Brief* at 19. We disagree.

■ It is error for a trial court to rely on juvenile offenses to enhance a sentence when "the presentence report and the rest of the record before the trial court neither reveal[ ] any facts about the events constituting [the] juvenile history nor demonstrate[ ] any adjudications." *Day v. State,* 560 N.E.2d 641, 643 (Ind.1990). Here, Bear's presentence investigation report provided that, after a guilty plea, he was convicted as an adult offender for receiving stolen property, a Class D felony. *Appellant's Appendix* at 152, 155. Furthermore, the trial court did not simply rely on Bear's presentencing report. During the sentencing hearing Bear testified, and the trial court found, that Bear was on probation when he committed this crime, and that while out on bond for the child molest-

ing charge, he committed another crime. *Id.* at 410, 415.

Our supreme court upheld criminal history as an aggravating factor where the trial court "appropriately noted that [the defendant] was on parole at the time of the incident and had a prior conviction...." *See Johnson v. State,* 725 N.E.2d 864, 868 (Ind.2000) (citing IC 35–38–1–7.1(b)(2)). Under the precedent of *Johnson,* the trial court properly used Bear's criminal history as an aggravating factor.

■ Bear does not challenge the remaining aggravating circumstances, among which is the statement that Bear was in a "position of trust" with the victim. "[A]busing a 'position of trust' is, by itself, a valid aggravator which supports the maximum enhancement of a sentence for child molesting." *Jaco,* 760 N.E.2d at 183; *Singer v. State,* 674 N.E.2d 11, 14 (Ind.Ct. App.1996).

■ After presiding over Bear's trial and hearing his testimony during the sentencing hearing, the trial court found at least two valid aggravators—Bear's prior history of criminal or delinquent activity and his having violated his "position of trust" as J.W.'s babysitter. A single aggravating factor is sufficient to sustain an enhanced sentence. *Davies v. State,* 758 N.E.2d 981, 986 (Ind.Ct.App.2001), *trans. denied* (2002). Either aggravator would have been sufficient to support the maximum ten-year enhancement. Bear was given only four additional years, which were then suspended to probation. At the sentencing hearing, no specific testimony was offered as to why Bear's mental health or age should be a mitigating factor. In light of the valid aggravators and mitigators, and the fact that the court imposed six years less than the maximum sentence,

we cannot say that the trial court abused its discretion in imposing Bear's sentence.

Affirmed.

SULLIVAN, J., and ROBB, J., concur.