## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 23 2017, 9:31 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Phillip R. Skodinski
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Emmanuel Ross, Sr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | May 23, 2017 <br><br> Court of Appeals Case No. <br> 71A04-1612-CR-2850 <br><br> Appeal from the St. Joseph Superior Court. <br> The Honorable Elizabeth C. Hurley, Judge. <br> Trial Court Cause No. <br> 71D08-1511-F1-13 |

**Shepard, Senior Judge**

[1] Emmanuel Ross, Sr. got a ride to Roger Winn's home, the place where Ross and his girlfriend Alicia Underwood had arranged to meet. This led to two separate physical altercations—one at the house and one in Winn's truck—and

six criminal charges against Ross. A jury found Ross guilty on one count of battery with moderate bodily injury[1] and one count of failure to return to lawful detention.[2] We affirm.

## Issue

[2] Did the trial court abuse its discretion by allowing the State to question Underwood on re-direct about the reason for the threats Ross made after he fled?

## Facts and Procedural History

[3] On November 5, 2015, the date of the altercations, Ross was housed at DuComb Community Corrections Center in St. Joseph County. Ross had applied for a pass from the center to purchase clothing for work and was to return to the center by 1 p.m. He also made plans, which were beyond the provisions of his pass, to visit Underwood at Winn's house. Underwood considered Winn to be like an uncle.

[4] According to Underwood, things proceeded amicably at first, discussing their baby, whom they had agreed to place for adoption, and enjoying photographs of the child. She testified that things turned for the worse, however, when she and Ross began to argue about her new boyfriend.

---

[1] Ind. Code § 35-42-2-1(d)(1) (2014).

[2] Ind. Code § 35-44.1-3-4(c) (2014).

[5] Upon returning home, Winn heard Underwood and Ross arguing about her new boyfriend. He intervened only after he saw that the argument had turned physical, with Ross putting his hands and forearm on and around Underwood's neck, ultimately causing her to lose consciousness. Ross then began to fight with Winn, choking him in the process, causing Winn to lose consciousness. After she regained consciousness, Underwood attempted to call 911 during Ross and Winn's struggle. Winn regained consciousness and saw Ross chasing Underwood to prevent the call.

[6] Somehow the situation de-escalated and Ross apologized, telling the two that he was sorry, that they "were supposed to be family," and that he did not know why he just snapped. Tr. p. 28. The three got into Winn's 1977 Ford F-150— Winn was driving, with Ross sitting between him and Underwood on the bench seat—so they could get Underwood to work on time. Ross, however, became agitated after speaking to someone on his cell phone and telling the person that he planned to kill the three of them—meaning Underwood, Winn, and himself.

[7] Ross suddenly jammed his foot onto Winn's right foot, causing the truck to accelerate. The only way Winn could reduce speed was to turn off the ignition. Once the truck rolled to a stop, Underwood jumped from the truck to flag down help. Ross tried to follow Underwood, but Winn pulled him back into the truck. The two then began to struggle as the truck rolled backwards. While Winn placed the truck in park, Ross bit Winn's ear, causing it to bleed, and later require stitches. Meanwhile, Underwood had caught the attention of a

passing motorist and a police officer. Once Ross saw the officer, he ran from the truck, eluding police for nearly two weeks before his capture.

[8] Ross on appeal asks us to determine that he was prejudiced by the admission of testimony about threats Ross made against Underwood after the incident.

# Discussion and Decision

[9] The scope and extent of testimony on re-direct examination is subject to the trial court's discretion, reversed only upon a showing of an abuse of that discretion. *Meagher v. State*, 726 N.E.2d 260 (Ind. 2000). If a new matter is raised on cross-examination, it is entirely appropriate to allow the opposing party to respond. *Id.*

[10] Winn testified that he arrived at his home in time to wash up from delivering papers and prepare to take Underwood to her first day of work. He was aware that Underwood and Ross had arranged to meet at his house while Ross was released on his pass. Both Underwood and Winn testified that Ross was arguing about Underwood's new boyfriend. Underwood testified that she had placed their baby for adoption with Ross' consent.

[11] On direct examination, Underwood testified that Ross was upset about her dating someone new. During cross-examination, she was asked if she and Ross were arguing about the baby. She testified that they were arguing about her new boyfriend. Over objection, on re-direct, she was asked if she had spoken with police officers about threats Ross made to her after November 5, 2015.

Her testimony was limited to her statement that Ross was the person who made threats against her by phone.

[12] When Ross took the stand, he testified that he was upset and arguing about the decision to place the baby for adoption. Allowing Underwood to testify about the topic of their argument was not an abuse of discretion. Arguing about the loss of contact with a child he had fathered could have provided an explanation for his actions. However, other evidence revealed that he was jealous over his former girlfriend's new boyfriend. The jury weighed the evidence and assessed the credibility of the witnesses and concluded otherwise.

# Conclusion

[13] In light of the foregoing, we affirm the trial court's decision.

Kirsch, J., and Brown, J., concur.